## Case No. 6,718.

### HOTCHKISS v. GREENWOOD et al.

[4 McLean, 456; [1] 2 Robb. Pat. Cas. 730.]

Circuit Court, D. Ohio. July Term, 1848. [2]

PATENTS—NEW MATERIAL—KNOWN MODE—OLD ARTICLE.

1. A patent right can not be sustained for making an article of a new material, according to a known mode.
[Cited in Slemmer's Appeal, 58 Pa. St. 164.]
[See note at end of case.]

2. If the material be new, as a compound invented, a patent right may be claimed for that.
[Cited in Butler v. Bainbridge, 29 Fed. 143; Page Woven-Wire Fence Co. v. Land, 49 Fed. 937.]

3. The invention must relate to something new, in structure or material.

4. Door knobs having been made of glass, wood, brass, and other materials, the making of the same of potter's ware, or porcelain, a material long known, will not entitle any one to a patent. And if the mode of fastening the shank to the knob be the same as has been done in fastening the shank to knobs made of other materials, there is no invention to sustain an exclusive right. And this is the case, although the porcelain knob may be more valuable than knobs made of any other materials.
[See note at end of case.]

[This was an action at law by Julia P. Hotchkiss, executrix of John E. Hotchkiss, John A. Davenport, and John W. Quincy against Miles Greenwood and Thomas Wood, partners in trade under the name of M. Greenwood & Co., to recover for the alleged infringement of letters patent No. 2,197, granted to J. E. Hotchkiss, July 29, 1841.]

Mr. Ewing, for plaintiffs.

Fox & Chase, for defendants.

OPINION OF THE COURT. This action was brought against the defendants, to recover damages for the infringement of a patent right obtained by John E. Hotchkiss and others, for an improved method of making knobs for locks, doors, cabinet furniture, and all other purposes for which wood and metal, or other material, for knobs are used, etc. The defendants pleaded not guilty, and gave notice that the improvement claimed was known and practiced, and that such knobs were made, used, and sold by others, before his patent, in different parts of this country, and also in Great Britain and Germany, etc. The patent was given in evidence, and the schedule which constitutes a part of the patent, in which the patentees claimed that they "had invented an improved method of making knobs for locks, doors," etc. "And that the improvement consists in making said knobs of potter's clay, such as is used in any species of pottery; also of porcelain; the operation is the same as in pottery, by molding and burning, and glazing; they may be plain in surface and color,

---

[1] [Reported by Hon. John McLean, Circuit Justice.]
[2] [Affirmed in 11 How. (52 U. S.) 248.]

or ornamented to any degree in both; the modes of fitting them for their application to doors, locks, furniture, and other uses, will be as various as the uses to which they may be applied, but chiefly founded on one principle, that of having the cavity in which the screw or shank is inserted, by which they are fastened, largest at the bottom of its depth, in form of a dovetail, and a screw formed therein, by pouring in metal in a fused state. In the annexed drawing A represents a knob with a large screw inserted, for drawers and similar purposes; B represents a knob with a shank to pass through and receive a nut; C the head of the knob calculated to receive a metallic neck; D a knob with a shank, calculated to receive a nut on the outside or front." "What we claim as our invention, and desire to secure by letters patent is, the manufacturing of knobs, as stated in the foregoing specifications, of potter's clay, or any kind of clay used in pottery, and shaped and finished by molding, turning, burning and glazing; and also of porcelain."

Evidence was given to the jury, conducing to show the novelty and utility of the invention by the patentees, as claimed by them, and that it was their joint invention. Some evidence was given by the defendants tending to show that the said alleged invention was not originally invented by any one of the said patentees; and that, if said invention was original with any of the patentees, it was not the joint invention of all of them; and other evidence tending to show that the mode of fastening the shank or collet to the knob, adopted by the plaintiffs and described in their specifications, had been known and used in Middletown, Connecticut, prior to the alleged inventions of the plaintiffs, as a mode of fastening shanks or collets to metallic knobs. And the evidence being closed, the counsel for the plaintiffs insisted in the argument that, although the knob, in the form in which it is patented, may have been known and used in the United States, prior to their invention and patent, and although the shank and spindle, by which it is attached, may have been used and known in the United States prior to said invention and patent, yet if such shank and spindle had never before been attached to potter's clay or porcelain, and if it required skill and thought and invention to attach the said knob of clay to the metal shank and spindle, so that the same would unite firmly and make a solid and substantial article or manufacture; and if the said knob of clay or porcelain so attached, were an article better and cheaper than the knob theretofore manufactured of metal or other materials, that the patent was valid, and asked the court so to instruct the jury. This instruction, gentlemen of the jury, the court refuse to give, in the form requested. The plaintiffs claim no invention in regard to the material of which the knob is composed. In their specifica-

tions, they say, "the improvement consists in making said knobs of potter's clay, such as is used in any species of pottery; also of porcelain," etc. These materials have been known for ages, nor was there any novelty in the knob itself, as knobs of a similar form, made of other materials, had long been in use. They had been constructed of brass, silver, glass, wood, iron, etc. The shank and spindle were not claimed as new. There was nothing left, then, but the attaching of the spindle to the knob. And on this point the instruction is made to turn. "Yet if such shank and spindle had never before been attached to a knob made of potter's clay or porcelain, and if it required 'skill and thought and invention' to attach the said knob of clay to the metal shank and spindle, so that the same would unite firmly and make a substantial article or manufacture," etc. It is true this part of the instruction is founded upon the supposition, that to attach the spindle to the knob of clay or porcelain, "required skill and thought and invention," leaving the invention, without designating it in any form, or saying that it must be different from any known mode, open to the jury. Now it requires skill and thought to attach a spindle to any kind of knob. Such skill as an individual acquainted with mechanics, only, can exercise; and no skill can be exercised without more or less of thought. And where skill and thought are united, two of the requisites to sustain the right of the plaintiffs, unless the mind of the jury were brought distinctly to the point of invention, which is the hinge of the case, they might infer its existence from the two preceding requisites.

To give an exclusive right, there must be, what is called a new principle, invented. Not a new principle in an abstract sense, for none such is likely to be discovered; but a new combination or mode, for instance, of attaching the spindle to the knob. If in this there is nothing different from a known mode, there can be no invention which gives a new right to the plaintiffs. And yet the mind of the jury, by the instruction asked, is not drawn to this consideration. This instruction, therefore, in the form asked, is rather calculated to mislead the jury to bring to their minds, distinctly, what the invention must be. Another part of this instruction, as asked, is objectionable. "And if the knob of clay or porcelain so attached, were an article better and cheaper than the knob theretofore manufactured of metal or other materials, that the patent was valid," etc. Now, here, the "cheapness" and "quality" of the article are relied on as giving, or contributing to give, the plaintiffs an exclusive right. But these afford no ground whatever for a patent. The words "so attached," are used referring to the preceding part of the sentence, requiring skill, thought and invention, but not so as to bring the mind of the jury to what must be invented to sus-

tain the patent; and the quality and cheapness of the article are so connected as to have an influence on the jury, to which they are not entitled. In an action of this kind, the comparative value of the thing invented, so far as the exclusive right is concerned, it is not necessary to show beyond the fact that it is useful, or of some value. An article made according to a known method, may be better than other articles made in the same manner, on account of its superior mechanism. But this is no foundation of an exclusive right. And if a material not before used in the same structure be used, that gives no claim to a patent, though the article be more valuable than any other of the kind. If a compound be made, not before known, of different ingredients, that is a ground for a patent, not for the thing constructed, but for the compound of which it is made.

The ground on which a patent may be claimed is, that something new and useful has been invented. A thing which did not before exist. A machine, for instance, differing from all other machines in its structure, movement or effect, by reason of the introduction of some new mechanical combination or principle. The court will, therefore, instruct the jury, "that if knobs of the same form and for the same purposes with that described by the plaintiffs in their specifications, made of metal of other material, had been known and used in the United States prior to the alleged invention and patent of the plaintiffs; and if the spindle and shank, in the form used by the plaintiffs, had before that time been publicly known and used in the United States, and had been theretofore attached to metallic knobs by means of the dovetail and the infusions of melted metal, as the same is directed in the specification of the plaintiffs, to be attached to the knob of potter's clay or porcelain, so that if the knob of clay or porcelain is the mere substitution of one material for another, and the spindle and shank be such as were theretofore in common use, and the mode of connecting them to the knob by dovetail be the same that was theretofore in use in the United States, the material being in common use, and no other ingenuity or skill being necessary to construct the knob than that of an ordinary mechanic acquainted with the business, the patent is void and the plaintiffs are not entitled to recover."

The counsel for the defendants asked the court to instruct the jury, that if they should be satisfied that any one of the patentees was the original inventor of the article in question, and that the same was new and useful, yet if they should be satisfied from the evidence that all the patentees did not participate in the invention, the patent is void, and the plaintiffs can not recover. And the court gave the instruction, modified by the remark, that the patent was prima facie evidence that the invention was joint, though

the fact might be disproved at the trial; and the court said, there was no evidence, except that of a slight presumption, against the joint invention as proved by the patent.

The jury found for the defendants, and the case being taken to the supreme court, on points excepted to, was affirmed. 11 How. [52 U. S.] 248.

[NOTE. The plaintiffs then took the case on writ of error to the supreme court, where the judgment was affirmed in an opinion by Mr. Justice Nelson, who said that it may well be that, by connecting the material mentioned in this patent with the metallic shank, an article is produced which is much better and cheaper than where a metallic or wooden knob is used, but this does not result from any new mechanical device. No patent can be granted for the manufacture of an old article out of some other material, which is better adapted to the purpose than the one now in use. Such difference is formal, and merely affords evidence of judgment and skill in the selection of materials. Unless more ingenuity and skill in applying the old method of fastening the shank and the knob were required in the application of it to the clay or porcelain knob than were possessed by an ordinary mechanic acquainted with the business, there was an absence of that degree of ingenuity which is an essential element of every invention. In other words, the improvement is the work of a skilful mechanic, not that of the inventor. Mr. Justice Woodbury dissented. 11 How. (52 U. S.) 248.]