## BUTLER and others *v.* BAINBRIDGE and others.[1]

*(Circuit Court, S. D. New York.* November 16, 1886.)

1 PATENTS FOR INVENTIONS—JOINT INVENTORS.

The defense that two persons to whom a patent has issued as joint inventors were not, in fact, joint inventors. is so purely formal that it cannot be regarded with favor, unless it be shown that the action of the patentees in that regard was disingenuous, or calculated to mislead the defendants.

2. SAME—DEFENSE OF WANT OF JOINT INVENTION—PLEADING.

Where the defense of want of joint invention in the patentees was not pleaded, nor fairly raised by the answer, but proofs to support it were taken, and the point made at the hearing, *held,* there was grave doubt whether the defense could be considered.

3. SAME—NOVELTY, PROOF OF WANT OF.

Where devices which were definitely proved to have been before did not anticipate the invention. and those which would anticipate were not definitely proved to have been before, *held,* that the evidence was too vague, uncertain, and indefinite to satisfy the mind of the court beyond a reasonable doubt, and to overcome the presumption of novelty arising from the patent itself.

4. SAME—INVENTION—PRESENCE OF, HOW DETERMINED.

In a patent case, the question of invention must depend upon the facts and circumstances of the case, and the perplexities which surround such controversies cannot always be solved by an examination of adjudged cases. They serve to illuminate the paths to be traversed, but he who desires to select the right one must depend largely upon his own judgment.

5. SAME—EMBOSSED CARDS.

A claim for "a circular or card having two or more folds, upon one or more of which are embossed or pressed out a raised panel or panels. to represent cards, upon which the printing is afterwards done, substantially as and for the purpose set forth," sustained. although the art of embossing was old at the date of the invention, and cards having smaller printed cards pasted upon them, and papers struck up, with various figures, emblems, and devices, including small rectangular panels, were well known prior to that date.

6. SAME.

Although the invention may be a simple one, and it is hard to understand why the idea did not occur to some one long before. still if the fact remains that it never did, although something of the kind was long wanted, these circumstances warrant the conclusion that there was invention in producing it.

7. SAME—CHARACTERISTICS OF INVENTION—MECHANICAL SKILL.

"It is the presence of a thought like this which raises an ordinary mechanic to the plane of an inventor. Invention requires thought; mechanical skill does not. The one is the result of mental, the other of manual action."

In Equity. Bill for infringement.
*James A. Whitney* and *L. E. Gilbert,* for complainants.
*Edwin H. Brown,* for defendants.

COXE, J. This is an action in equity, based upon letters patent. No. 273,023, granted to Orlando W. Butler and Thomas W. Kelley, February 27, 1883, for an improvement in paper for cards and circulars. The purpose of the invention was to supersede the expensive and cumbersome method of pasting separate cards upon wedding invitations and similar papers, by substituting therefor a card having

[1] Edited by Charles C. Linthicum, Esq., of the Chicago bar.

two or more folds, upon which the desired number of panels, to represent cards, are embossed or pressed out. On these raised panels the printing may afterwards be done. When the invitation is folded, the unsightly cavities produced by the process of embossing are concealed from view by one of the flaps of the paper. The cards when finished have the same general characteristics as their pasted predecessors, but, in addition, they are more symmetrical and uniform in appearance, can be manipulated with greater ease, are less liable to become soiled, and are about 50 per cent. cheaper. The invention has received the marked approval of dealers in stationery, and of the public. The patented cards have gone into general use, displacing the old devices referred to. The claims are as follows:

(1) A circular or card having two or more folds, upon one or more of which are embossed or pressed out a raised panel or panels, to represent cards, upon which the printing is afterwards done, substantially as and for the purpose set forth. (2) In an invitation-card, a portion upon which is embossed or pressed out, a panel or card for the invitation proper, in combination with folds, upon one or more of which is embossed a smaller card or cards, for the names of the parties substantially as herein shown and described. (3) The central portion, A, in combination with the folds, B, C, embossed cards, D, D, and embossed panel or bead, E, all constructed as described, and for the purpose herein set forth and described.

The defenses are lack of novelty and invention, and that the complainants are not joint inventors.

Infringement of the first and second claims is admitted. The cards dealt in by the defendants are almost the exact counterpart of Fig. 2 of the drawings, and were sold in boxes marked with the date of the complainants' patent.

The defense that complainants are not joint inventors is so purely formal in character that it cannot be regarded with favor, unless it be shown that the action of the patentees in this regard was disingenious, or calculated to mislead the defendants. Nothing of this kind appears, and it is thought that, upon principle and authority, there can be little difficulty in sustaining, upon the merits, the action of the patent-office in issuing the patent in its present form. *Worden* v. *Fisher*, 11 Fed. Rep. 505; *Barrett* v. *Hall*, 1 Mason, 447; *Hotchkiss* v. *Greenwood*, 4 McLean, 456, 461. There is, however, grave doubt whether the defendants are in a position to present the question. The defense is not pleaded, and there is nothing in the answer which can fairly be construed to put the matter at issue. Walk. §§ 440, 452.

The question of novelty and invention remains to be considered. It is entirely clear that at the time the complainants conceived the invention, in the fall of 1880, the art of embossing was old and well understood. Cards having smaller printed cards pasted upon them, and papers struck up with various figures, emblems, and devices, including small rectangular panels, were all known to printers, engravers, and stationers prior to this date. This, in brief, is a fair

general statement of the art as it existed at the time of the invention.

The defendants have introduced in evidence nearly a hundred limiting and anticipating exhibits. It is not disputed that many of them are wholly irrelevant to the issues involved, and it is conceded that others had no existence prior to the invention. Of others, it may be said that the dates when they were first seen are wholly conjectural. In short, those which are definitely proved to have been before do not anticipate, and those which would anticipate are not definitely proved to have been before. The evidence is too vague, uncertain, and indirect to satisfy the mind of the court beyond a reasonable doubt, and to overcome the presumption of novelty arising from the patent itself. Unquestionably, however, the proof demonstrates that the field in which the complainants operated was at best a narrow one, and the question arises, is the patent, though it cannot be defeated for want of novelty, void for lack of invention? To this question it is by no means easy to give an entirely satisfactory answer. Each case must depend upon its own facts and circumstances. The perplexities which surround such controversies cannot always be solved by an examination of adjudged cases. They serve to illuminate the paths to be traversed, but he who desires to select the right one must depend largely upon his own judgment. Although the present case is very near the border-line between invention and mechanical skill, it is thought that the doubt which arises should be resolved in favor of the patent. No one ever did before what the complainants did, viz., produce an invitation card with two or more folds, having panels to represent cards, embossed thereon, upon which the printing is afterwards done. This particular structure is new, useful, and inexpensive. It soon became popular; it supplies a need. Time and thought were required in its development. The obstacles which theretofore could only be surmounted by skilled labor were entirely eliminated. All this required something more than the work of the mechanic. It amounted to invention.

The whole matter is well illustrated by a question and answer quoted with approval upon the defendants' brief. One of the complainants was asked if he thought that prior to October, 1880, persons of ordinary skill in the art would have been unable to produce representations of cards by embossing upon paper, and the answer was: "If they happened to think of it, probably they would not." Exactly so. It is the presence of a thought like this which raises an ordinary mechanic to the plane of the inventor. Invention requires thought; mechanical skill does not. The one is the result of mental, the other of manual, action.

Grant that the invention is a simple one, that when viewed from our present standing-point it is hard to understand why the idea did not occur to some one long before, and yet the fact remains that it never did, though something of the kind was long wanted. After giving the subject the best thought of which I am capable, I am convinced

that to relegate these complainants to the condition of mere skilled workmen would be to do them a grave injustice.

In the light of the present, the idea of substituting hard rubber for other material, as a plate for holding artificial teeth, or of providing tubular kerosene lanterns with an irreversible current of air by means of deflectors, seems simple enough, and yet the men who *thought* of these things conferred lasting benefits upon the world, and received the rewards of inventors. *Lantern Co.* v. *Miller*, 21 Fed. Rep. 514; *Smith* v. *Goodier*, 93 U. S. 486.

In *Crandal* v. *Watters*, 20 Blatchf. 97, S. C. 9 Fed. Rep. 659, the patent was for a box loop for carriage tops, made of thin metal, from which the loop was struck up. It was used as a substitute for the old leather housing. In sustaining the patent, the remarks of Judge BLATCHFORD are so applicable to the case at bar that I quote briefly from the opinion. · At page 102 he says:

"Various old devices are introduced. * * * But no article like the plaintiff's, capable of being taken and used for the purposes for which the plaintiff's can be used, without alteration and adaptation, requiring invention, existed before. Almost all inventions, at this day, that become the subject of patents, are the embodiment and adaptation of mechanical appliances that are old. In that consists the invention. When the thing appears it is new, and useful. No one saw it before; no one produced it before. It supplies a need. It is at once adopted. All in the trade desire to make and use it, yet it is said to have been perfectly obvious, and not to have been patentable. Where an article exists in a given form, and applied to a given use, and is taken in substantially the same form, and applied to an analogous use, so as to make a case of merely double use, there is no invention. But it is very rarely that a thing of that kind secures a patent."

There should be a decree for the complainants for an injunction and an account, with costs.