## PAGE WOVEN WIRE FENCE CO. *v.* LAND.

*(Circuit Court, E. D. Michigan.  December 16, 1891.)*

**1. PATENTS FOR INVENTIONS—ORIGINAL INVENTOR—PRESUMPTIONS FROM PATENT.**
    In a suit for infringement the introduction of the patent is *prima facie* proof that the patentee is the original and first inventor, and the introduction of subsequent letters, under which the alleged infringing device is made, does not overcome this presumption.

**2. SAME—JOINT PATENT.**
    The issuance of a patent to two persons, as joint inventors, constitutes *prima facie* proof that the invention was joint.

**3. SAME—INFRINGEMENT—EVIDENCE TO SUPPORT BILL.**
    The mere fact that defendant has constructed or is constructing, in accordance with a subsequent patent, machines which embody substantially the same devices covered by complainant's patent, and which are claimed to be an infringement, is sufficient to support the bill when the answer admits that, if found successful, defendant intends to sell machines and territory.

**4. SAME—EXTENT OF CLAIM—DESCRIPTION—ONE DEVICE WITH SEPARATE FUNCTIONS —WIRE-FENCE MACHINE.**
    Letters patent No. 414,844, issued November 12, 1889, to John W. Page and Charles M. Lamb, is for an improved machine for weaving wire fences.  The essential device is a hollow needle, approximately cylindrical in shape, open along one side, and adapted to straddle the warp-wire and rotate, so as to wind about it the woof-wire, with which it is threaded, forming a knot, at the same time having a slight longitudinal reciprocating motion, to give the knot an elongated forward twist, which, as stated in the specifications, "is desirable because of its extreme security."  The inventors state that, owing to the complicated nature of the mechanism, they have deemed it desirable to give a detailed description, but that they do not wish to limit their invention to the details of construction, and that the claims are intended to be construed as broadly as the state of the art will permit.  Claim 12 covers "a longitudinally-slotted needle, adopted to hold the woof-wire, and supported, to rotate in its bearings, substantially as and for the purpose set forth."  Claim 14 is the same as claim 12, with the addition that the needle is to "be reciprocated longitudinally," for the purpose set forth.  *Held,* that claim 12 covers the needle without the reciprocating longitudinal motion to give the knot the preferred "forward twist," and is infringed by a device constructed under letters patent No. 435,042, and issued August 26, 1890, and which is essentially the same as the needle, omitting this reciprocating feature.

**5. SAME—CONSTRUCTION OF CLAIMS.**
    A construction which will make two distinct claims of a patent cover, not different things, but one and the same thing, is to be avoided, if possible; and, where a device performs two distinct operations, a claim may be based upon each without covering the other.

In Equity.  Suit by the Page Woven Wire Fence Company against Abel Land for infringement of a patent.  Injunction granted.

*Dyrenforth & Dyrenforth,* for complainant.

*Grant Fellows, Salsbury & O'Mealey,* and *M. F. Chamblin,* for defendant.

JACKSON, Circuit Judge.  The complainant corporation, or assignee of the entire right, title, and interest in and to letters patent of the United States No. 414,844, granted November 12, 1889, to John W. Page and Charles M. Lamb, for a new and useful improvement in wire-fence machines, brings this suit against the defendant, Abel Land, for infringement thereof.  The bill, which was filed September 13, 1890, contains the averments and allegations usual in such cases, and need not be specially noticed.  In his answer the defendant denies knowledge of complainant's title to said letters patent, but admits the issuance thereof at the date stated to said Page and Lamb.  He denies that said pat-

entees were the original, first, and joint inventors of the patented machine described in said letters, and states that said patentees—

"Surreptitiously and unjustly obtained said letters patent for that which was in fact invented by this defendant and his son, Stephen Land, and who were using reasonable diligence in adopting and perfecting the same, as was well known to said Page and Lamb when they applied for their letters patent."

He admits that he had made one or more machines in accordance with letters patent No. 435,042, granted to himself August 26, 1890, and that he intends to use them, and others like them, for specified business purposes, if found suitable, but he denies that his machines infringe complainant's patent. The assignment of said letters patent to complainant is fully established, and its title thereto was not questioned at the hearing. The defendant offered no proof in support of his denial that Page and Lamb were not the original, first, and joint inventors of the patented machines covered by and described in said letters patent No. 414,844, nor did he make any attempt to establish the claim set up that he and his son were the real inventors thereof. These questions are therefore out of the case, under the well-settled rule that complainant's introduction in evidence of his patent in due form is sufficient to show that he is the original and first inventor of his device or improvement, as the same may be construed and defined by the courts, unless sufficient evidence to overcome that presumption, and to establish the contrary allegation of the answer, is exhibited in the record. In other words, the burden of proof is on the defendant to show that the patentee was not the original and first inventor. *Ransom* v. *Mayor, etc.*, 1 Fish. Pat. Cas. 252; *Green* v. *French*, 21 O. G. 1351, 11 Fed. Rep. 591; *Doubleday* v. *Beatty*, 22 O. G. 859, 11 Fed. Rep. 729; *Stone Co.* v. *Allen*, 14 Fed. Rep. 353; *Agawam Co.* v. *Jordan*, 7 Wall. 583; *Seymour* v. *Osborne*, 11 Wall. 538; and *Mitchell* v. *Tilghman*, 19 Wall. 390, 391. The letters patent subsequently granted to the defendant do not overcome this *prima facie* presumption in favor of the prior patentee. *Dental Vulcanite Co.* v. *Gardner*, 4 Fish. Pat. Cas. 224, and cases cited. It is also settled that said letters patent to Page and Lamb, as joint inventors, is *prima facie* evidence that the invention therein described was joint. *Hotchkiss* v. *Greenwood*, 4 McLean, 456.

At the hearing counsel for respondent contended that the proof failed to establish the fact that the defendant at the time the bill was filed had made or caused to be made, and had used for the manufacture of wire fence, one or more machines containing and embodying as a part thereof the inventions and improvements described and claimed in complainant's letters patent. Without reviewing the evidence, we think it is clearly shown by the testimony of the witnesses Harvey and Abbott that prior to the filing of the bill on September 13, 1890, the defendant had constructed, and used the same in the making of wire fencing, one or more machines which it is claimed embodied complainant's invention, and which contained substantially the same devices described in letters patent No. 435,042, issued to him August 26, 1890. It admits of little or no question, under the proof, that prior to the grant of said letters

patent No. 435,042 he was constructing machines in accordance therewith, which he admits in his answer he intends to employ in making enough fence to test, and, if found suitable for the purpose, "to sell territory and machines for the manufacture of wire fence." Under these circumstances, the complainant's bill was not prematurely filed. Even if defendant had not prior thereto actually constructed machines for the manufacture of wire fence embodying the woof-winding mechanism covered by complainant's letters patent, his intention to try machines embodying said invention, and, if found suitable for the purpose, to sell the same for the manufacture of wire fence, would be sufficient to sustain the bill. In such cases, courts of equity recognize and enforce a larger and more remedial process than can be obtained in actions at law. This is clearly stated in *Woodworth* v. *Stone*, 3 Story, 749, 750, where it is said:

"The case is not that of an action at law for the breach of a patent, to support which it is indispensable to establish a breach before the suit was brought. But in equity the doctrine is otherwise. A bill will lie for an injunction if the patent-right is admitted, or has been established upon well-grounded proof of the apprehended intention of the defendant to follow [infringe] the patent-right. A bill *quia timet* is an ordinary remedial process in equity."

While the bill rests primarily upon the theory of actual prior infringement, still if that was not sustained the court can, under the prayer for general relief, proceed to protect the complainant's right from intended infringement by the exercise of its remedial process in the shape of an injunction, if the case warrants such relief.

The remaining and real controverted question in the case is whether the defendant in the machines constructed or intended to be made by him for the manufacture of wire fencing infringes the complainant's patent, or embodies any of the devices thereof covered by its claims. A full and detailed description of the letters patent sued on is not deemed necessary to the correct determination of this question. The patent in its entire mechanism is exceedingly elaborate and complicated, containing 8 sheets of drawings, with 37 figures, 10 pages of specification and descriptions, and 21 different claims. As stated in the specification, the invention relates to a machine for manufacturing wire fences, and its operation, taken as an entirety—

"Is in the nature of a weaving operation, the wires referred to as constituting the horizontal fence-wires affording the warp in the weaving, and those referred to as the vertical or stay wires affording the woof. The warp-wires are fed from spools in desired number and at required distances apart to the take-up mechanism, which receives the finished article, and is actuated intermittingly to take up lengths thereof, and alternates with a woof-wire winding and stringing device, which as soon as a finished length of fencing has been taken up, is actuated to travel transversely across the warp-wires, stopping at each, and winding around it a woof-wire, with which it is threaded."

This woof-wire winding and stringing device or mechanism and its operation is described at length and in great detail, and it is stated that at the forward end thereof there is—

"A hollow needle, S, (Fig. 28,) of approximately cylindrical shape, and open along one side, having formed or provided around it near its center a pinion, S', divided by a circumferential central groove, S², and so supported in its bearings as to permit to it a rotary and also a slight longitudinal reciprocating motion, and the forward end of the needle is threaded with the woof-wire, just about long enough to reach across the warp-wires when wound around each, and which we prefer to provide in the form of a coil, S⁵, (Fig. 29.)"

The operation of this needle when set in motion is first to fall upon or straddle and surround the first warp-wire at the right-hand side of the machine, and then to rotate about and reciprocate longitudinally along that wire, thereby winding around it the woof-wire, with which it is threaded, and forming a knot in the shape of an elongated forward twist, as represented in Fig. 30, which form of knot, as stated in the specification, "is desirable owing to its extreme security." The woof-winding device rises and shifts automatically from one warp-wire to another, and the threaded needle straddles and winds the woof-wire three times around each warp-wire throughout the series, when the device returns automatically to the place of beginning, to repeat the operation upon a new section of fence. The needle, S, at the forward end of the woof-wire winding and stringing mechanism, performs two separate and distinct functions or operations. By its rotary action it operates to wind the woof-wire, with which it is threaded, around each warp-wire, so as to make the tie or knot required for the desired mesh of the fence, and by its slight longitudinal reciprocating motion it operates to make such knot in the shape of an elongated twist; that form of knot being considered by the patentees most desirable for security.

After describing at great length the drawings and devices of their machine, the patentees state that—

"The extremely complicated nature of the mechanism constituting our machines, as illustrated, and of the operations of the various parts, has rendered necessary, we think, or at least advisable, the foregoing detailed description. We wish, however, to have it clearly understood that we do not consider our invention to lie in mere details of the construction, many of which may be, as we and others skilled in the art to which our machine relates might readily suggest, altered and simplified, and some even entirely omitted. The appended claims are therefore intended to be construed as broadly as the state of the art will permit for a machine involving generally any construction which, when broadly considered, is analogous to ours for its purposes—*First*, with relation to the warp-wires alone, and this whether or not the latter are coiled; *second*, with relation to the mechanism which will automatically wind and string the woof-wire across the warp-wires; *third*, with relation to the cooperation of the warp and woof wire weaving mechanisms."

Then follow numerous claims relating to the different devices by which the warp-wires are caused to progress intermittingly, by which the woof-winding mechanism is carried across the series of warp-wires from one to the other, by which the woof-winding mechanism, after having completed the operation, is returned to its starting point, by which the finished fence, as it is constructed, is stored upon the reel. These and several others, relating to other features of the patent, are not involved in the present suit, and need not be noticed.

The twelfth claim, of which alone infringement is asserted and relied upon at the hearing, relates to the needle device, by which, as the woof-wire is carried to each warp-wire of the series in turn, it is wound around or about each warp-wire, thus forming the mesh of the fence. Said twelfth claim is as follows:

"In a device for use in the manufacture of wire fence, comprising wires crossing each other, and secured together where they cross, for winding and stringing a woof-wire upon the warp-wires, a longitudinally-slotted needle, S, adapted to hold the woof-wire, and supported, to rotate in its bearing, substantially as and for the purpose set forth."

It is said on behalf of complainant that this device constitutes the fundamental principle of the patentee's machine, and is the ' nucleus about which all other mechanisms of the patent are formed, and which must be found in all other machines constructing or manufacturing similar fence, to render their operation successful. There is no proof in the record showing the state of the art on the subject of wire-fence manufacturing machines when complainant's patent was granted. It may therefore be assumed in its favor that said patent is of such a pioneer character as to entitle its claims to a broad and liberal construction, such as will sustain the patentee's invention.

The complainant's expert, William S. Bates, after stating that defendant's woof-winding mechanism was substantially the same as that described in the patent sued on, proceeds to give his construction of said twelfth claim, and a comparison thereof with the corresponding mechanism in defendant's machine, as follows:

"The twelfth claim in terms refers to a device for winding and stringing woof-wire upon the warp-wires of a wire fence. The mechanism claimed in the claim is a longitudinally-slotted needle, adapted to hold the woof-wire, and supported to rotate in its bearings, as set forth in the specification and drawings of the patent. This needle is supported that it may be moved across the fence from side to side. It may be stopped opposite each warp-wire, and may there be moved towards the wire, so that the slotted needle straddles the wire, (warp,) bringing the wire into its axis. It is then revolved, and winds the woof-wire upon the warp-wire, and it is then raised (automatically) off the warp-wire, and moved on to the next one, where the same operation takes place. The slot in the needle enables it to straddle the warp-wire and release it again, so as to wind the woof-wire around it, and pass on to the next warp-wire. The needle is supported in the bearing so that it can revolve on the arm, which is pivoted so as to carry the needle towards and from the warp-wire. This arm also travels across the fence to move the needle from one wire to another. The needle itself is composed, essentially, of a pinion, by which it is revolved, a slot in the pinion to enable it to straddle the warp-wires, and a bearing to support it, and the eye through which the woof-wire is threaded, so that it is carried by the needle. Other parts of the device are immaterial to the subject of this claim. Turning now to defendant's woof-winding mechanism, I find in it an arm which travels across the fence from side to side, which is adapted to stop opposite each warp-wire. This arm is pivoted, so that it can approach and recede from the warp-wire, and it has a pinion mounted in a bearing in it, and corresponding with the pinion of the complainant's patent. This pinion in defendant's mechanism is slotted, to enable it to straddle the warp-wires; it has a bearing to support it on the

arm, and it has a projection with an eye in it, through which the woof-wire is threaded. The woof-wire is thus carried by the slotted pinion, and when the pinion straddles the warp-wire, and it is revolved, the woof-wire is twisted around the warp-wire. When the pinion leaves the warp-wire, and moves on to the next, it carries the coil of woof-wire with it, and twists it around the next warp-wire, and so on across the fence. This device in defendant's mechanism, therefore, has all the material elements of the complainant's mechanism as defined in the twelfth claim of the patent. Both mechanisms have what is called in the patent 'a longitudinally-slotted needle;' that is, they both have a slotted pinion, mounted in a bearing so that it can revolve, and provided with a projection and an eye in it, through which the woof-wire is threaded. The mode of operation is the same in both of them; that is, they straddle the warp-wire, bring the wire into the axis of the needle or pinion, by virtue of the slot in it, and thus revolve, carrying the coil of woof-wire around the warp-wire, thus twisting it around the warp-wire, and then by virtue of the slot leave the warp-wire, and pass on to the next one, and repeat the operation. The function and mode of operation being the same, and the important parts of construction being the same, I consider that the two devices are identical, notwithstanding some slight differences of form which exist."

He then points out as differences of form the fact that the projection which carries the needle in complainant's device is nearly cylindrical, or in the form of a slotted sleeve, while in the defendant's arrangement the useless portions of metal are cut away, leaving an arm which is nearly flat, projecting from the pinion; also, that the pinion in defendant's device is larger in proportion than in complainant's. Again, complainant's needle revolves always in the same direction, while the defendant's revolves alternately in opposite directions, thus changing the direction of the wind of the woof-wire on the warp-wire. This, it is said, is a mere matter of choice, depending upon the gearing of the needle, and involving only mere matters of mechanical preference. Again, the needle in complainant's mechanism, as it rotates to wind the woof-wire upon the warp-wire, is also moved longitudinally to a slight extent, so as to cross the coil or tie of the woof-wire, and thereby form the elongated twist-knot already mentioned. In the defendant's mechanism there is no such longitudinal reciprocating motion. This last difference in the two devices is the one mainly relied upon by defendant and his expert to establish non-infringement. This slight longitudinal reciprocating motion of the complainant's needle is not in terms referred to in said twelfth claim, and is clearly shown not to be necessary in the manufacture of wire fences, but it is described in the specification as desirable, for the reason that it operates to form an elongated twist-knot, which has greater security than the simple crossing of the wires. The positions taken on behalf of defendant are—*First*, that said longitudinal reciprocating motion of the needle in the woof-winding mechanism of the patent, having been described as one of its functions or operations, should be taken as an essential element of the device or combination covered by the twelfth claim, and which the court cannot properly treat as immaterial, under the rule laid down in *Water-Meter* v. *Desper*, 101 U. S. 332, and *Gage* v. *Herring*, 23 O. G. 2119, 107 U. S. 640, 2 Sup. Ct.

Rep. 819, that a patentee makes all the elements of a combination material by the restricted form of his claim; *second*, that the separate elements of which the combination is composed·are not included in the monopoly of the patent, as held in *Rowell* v. *Lindsay*, 31 O. G. 120, 113 U. S. 97, 5 Sup. Ct. Rep. 507, and *Voss* v. *Fisher*, 30 O. G. 1096, 113 U. S. 213, 5 Sup. Ct. Rep. 511; and, *third*, that the patent being for a combination of several elements, and defendant not using one of them, —viz., the longitudinal reciprocating motion of the needle or pinion,— there is no infringement, upon the well-settled doctrine illustrated by the cases of *Vance* v. *Campbell*, 1 Black, 427; *Dunbar* v. *Myers*, 11 O. G. 35, 94 U. S. 187, and other authorities.

The decision of the case accordingly turns upon the question whether claim 12 of the patent is to be restricted by descriptive limitations; that is to say, by reading into it, as a material element thereof, the slight longitudinal reciprocating motion of the needle, S, as counsel for defendant contends. If the claim is thus restricted, there is clearly no infringement. If it is not construed to include such longitudinal reciprocating motion of the needle, it is equally clear that there is infringement. As already stated, the claim does not in terms mention this longitudinal motion of the needle, but refers to its rotary action. The object and purpose of the two motions were essentially distinct and different. The rotary motion was intended and operated to wind the woof-wire around the warp-wire, to form the mesh of the fence. The longitudinal reciprocating motion was designed and operated to form a knot of such shape as the patentees considered most desirable for security. It was preferential in its character. The mechanism as a woof-winding device for crossing the woof-wire around the warp-wire is in itself complete and operative without the longitudinal motion of the needle. That the patentees did not intend to cover the latter feature and operation of the needle by the twelfth claim is clearly shown by the fourteenth claim, which distinctly and in express language includes such motions of the needle. The fourteenth claim is as follows:

"In a device for use in the manufacture of wire fence, comprising wires crossing each other, and secured together where they cross, for winding and stringing a woof-wire upon the warp-wires, a longitudinally-slotted needle, S, adapted to hold the woof-wire, and supported, to be rotated on its own axis and be reciprocated longitudinally in its bearing, substantially as and for the purpose set forth."

It is perfectly manifest, therefore, that the patentees intended by the fourteenth claim to cover both the rotary and the longitudinal reciprocating motions of the needle, S, and that the twelfth claim was intended to cover only the needle's rotary motion. The construction which defendant's counsel contend for will make the twelfth and fourteenth claims identical. In *Tondeur* v. *Stewart*, 28 Fed. Rep. 561, it was said by Judge ACHESON that a construction which would make two distinct claims of a patent cover, not different things, but one and the same thing, was a result to be avoided, if possible. *Tondeur* v. *Stewart* presented substantially the same question involved in this case. When a patented device

performs two distinct operations, and for distinct purposes, no reason is perceived why a claim based thereon may not be made to cover only one of such operations without including the other. The twelfth claim of the patent sued on relates to the slotted needle, S, not generally or broadly as described in the specification, but only as it is adapted to hold the woof-wire, and supported, to rotate in its bearing, substantially as and for the purpose (not purposes) set forth. The purpose of the rotary motion of the needle, as set forth, was only to wind the woof-wire around the warp-wire. That was its main and most important function. That feature the claim was intended to cover. The longitudinal reciprocating motion of the needle effected by or through the circumferential groove, $S^2$, and employed to form a knot of certain preferential shape, is carefully omitted from the claim. No good reason appears for reading that feature of the needle's movement into the claim. There is nothing in the specification which may be looked to in ascertaining the true scope of the invention which will warrant the court in so construing the twelfth claim as to make it include by intendment or operation of law the longitudinal reciprocating motion of the needle, and thereby make said claim identical with the fourteenth claim of the patent; nor is there anything disclosed by the record as to the state of the art which should lead the court to so restrict the claim as to thereby protect the infringer, who has embodied the very essence of the patentee's invention. The patent in our opinion is entitled to a more liberal construction, such as was adopted in *Lake Shore & M. S. Ry. Co. v. National Car-Brake Shoe Co.*, 26 O. G. 915, 110 U. S. 229–238, 4 Sup. Ct. Rep. 33. The claims of the patent there sued on (No. 40,156, granted to James Bing, October, 1863, for an improvement in car-brakes) were as follows:

"(1) The shoe, A, and sole, B, both being constructed and adapted to each other, substantially as described, so that the sole can have a lateral rocking movement on the shoe, for the purposes specified.

"(2) The combination of shoe, A, sole, B, clevis, D, and bolt, G, the whole being constructed and arranged substantially as specified."

Only the second claim was sued on. The defendant contended that the element of the lateral rocking motion or movement of the sole, B, should be read into the claim, as it was described as one of the features of the sole in the specification. It was held both in the lower court (4 Fed. Rep. 219) and in the supreme court that this contention on behalf of defendant could not be sustained; that the intent to cover a broader construction was fairly deducible from the specification, and nothing appearing to show that the patentee was not entitled to the broader construction. That suit involved almost the direct point under consideration in the present case, and is conclusive against the restricted construction which it is sought to have placed upon the twelfth claim.

The conclusion of the court is that the slight longitudinal reciprocating motion of the needle, S, is not an element of the twelfth claim, and that the device covered by said claim is infringed by the defendant's machine. It follows that complainant is entitled to the relief sought by its bill, and that defendant should be enjoined from further

nfringement, which is accordingly so ordered and adjudged, with costs of suit to be taxed against the defendant. The usual reference may be had, if desired, by complainant.