## CHESHIRE v. COX MULTI-MAILER CO.

(Circuit Court of Appeals, Seventh Circuit. October 5, 1915. Rehearing Denied January 3, 1916.)

### No. 2202

1. PATENTS ⬙328—VALIDITY AND INFRINGEMENT—FEEDER FOR PRINTING PRESSES.

 The Brewer and Cheshire patent, No. 971,245, for a feeder for printing presses was the joint invention of the patentees, was not anticipated, and discloses patentable invention; also *held* infringed.

2. PATENTS ⬙91—JOINT INVENTION—PRESUMPTION FROM GRANT.

 It requires clear proof to overcome the presumption of joint invention created by the grant of the patent.

 [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 121–123; Dec. Dig. ⬙91.]

3. PATENTS ⬙92—PERSONS ENTITLED TO PATENT—JOINT INVENTORS.

 An invention may be joint, although both patentees did not hit upon the same inventive thought at the same time, but each contributed separate, but essential, elements of the combination.

 [Ed. Note.—For other cases, see Patents, Cent. Dig. § 124; Dec. Dig. ⬙92.]

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois; Julian W. Mack, Judge.

Suit in equity by Carey A. Cheshire against the Cox Multi-Mailer Company. Decree for defendant, and complainant appeals. Reversed.

Appellant brought this suit to restrain infringement of patent No. 971,245, granted September 27, 1910, for a feeder for printing presses, to Brewer and Cheshire. The device is one for expediting the feeding of books and pamphlets, through feed rolls, to printing or type cylinders. Appellee contends at the outset that, while the patent was granted to the two, it was in fact the invention of only one, Cheshire. Both of them were engaged in seeking a

feeder which would serve as a substitute for manual feeding. Cheshire was an inventor; Brewer was an engineer. The former finally hit upon the idea, so he testifies, that books and pamphlets might be segregated from each other by causing them to be held in the hopper, in a curved position, so that either the top or bottom book or pamphlet would stand out from the body of the books or other articles to be passed on to the printing cylinder to such a degree as to engage the vertically adjustable feeder points. These latter were provided by Brewer. He also suggested the base plate with upwardly curved edges, which was at first made flat, and then, at Cheshire's suggestion, curved downwardly at the edges. Both of them worked at the combination, and finally agreed on a device which had a concave reciprocating base plate curved transversely of its path of travel and having feed fingers to expel the lowermost book or pamphlet on the base plate.

Appellee further contends that by the patentees' action in the Patent Office they abandoned the broad invention which appellant now insists on, and accepted that found, as it asserts, in the limited character of the claims. Original claim 1 called for a hopper having a curved base, which should support the articles therein in curved positions, for the purpose stated. Claim 1 as granted calls for a reciprocating base plate having its side edges higher than its center, "so that articles to be printed resting thereon will lie in curved positions," causing their longitudinal central portions to be spaced apart, a stationary hopper, and a finger on the base plate to enter between the two lower articles at their spaced longitudinal centers. Original claim 2 calls for the reciprocating base plate, having its top surface curved, stationary hopper members to hold books, etc., to permit the lower one to project beyond the hopper members. Claim 2 of the patent covers a concave reciprocating base plate curved transversely of its path of travel to support articles so that they will stand spaced apart, stationary hopper members designed to hold books, etc., on the base plates, and to permit the lower one to extend beyond the base plate, and a finger on the base plate to enter between the two lower books, etc. Original claim 3 is for two curved hopper members, means for adjusting them toward and from each other, and a hopper member between said curved hopper members. Allowed claim 3 is for two reciprocating base members curved transversely of their line of travel, means for moving them from and towards each other, a central reciprocating member detachably supported between them, stationary hopper members to hold books, etc., on the reciprocating base members, and means carried by said base members for engaging the lower book, etc. Original claim 4 is for two curved hopper members, means for adjusting them to and from each other, and a central hopper member designed to be supported between said curved hopper members, the latter having a flat top. Present claim 4 calls for a reciprocating support member, a cross-head thereon, two segmental base plates adjustably affixed to the cross-head, and feeder fingers at one end of the base plates. Original claim 5 covers a reciprocating support member, a cross-head thereon, two segmental base plates, an adjustably fixed head, feeder fingers at one end of said base plates to said cross-head, and also at one end of said base plate members. Claim 5 of the patent calls for a base member, a feeder finger thereon capable of up and down movement and having an inclined lower end, a contractable spring to hold the yielding finger downwardly, and a set screw to engage the inclined end, for the purposes stated.

Originally there was presented a sixth claim. The patent has no sixth claim. It called for a base member with feeder finger mounted upon it capable of up and down movement, having an inclined lower end, a contractable spring to hold the yielding feeder finger downwardly, and a set screw designed to engage the inclined end, for the purposes stated. This claim is embodied in claim 5 of the patent. Each of the original and allowed claims calls for a combination. The specification discloses the object of the invention to be "to provide a feeder for printing presses of simple, durable and inexpensive construction, especially adapted for use in feeding books or pamphlets, and so arranged that it may be readily and easily adjusted to fit books or pamphlets of different sizes, and also so arranged that the feeder fingers may be made to firmly engage the lower one only of the pamphlets or books, and

said lower one may then be readily and easily moved from under the pile of books contained in the feeding hopper." Figure 1 of the drawings is here reproduced:

Fig 1.

The preferable form of base plate, as shown in said Figure 1 and in the specification, has a flat center with segmental or curved base plate on either side thereof, and this base plate forms the base of the hopper upon which the articles to be fed are placed in a curved position. About the base plate there is a hopper of ordinary construction for holding pamphlets or articles on the base plates against longitudinal movement. These are horizontally arranged rods (25) with vertical rods (26) adjustably connected therewith. The vertical rods are designed to engage the side and end edges of the books, pamphlets, or other articles lying on the base plate. These hopper rods are numbered 25 and 26 in the drawings. There is mounted upon the frame of the printing press a reciprocating supporting bar numbered 13, capable of movement toward and from the feed rollers, and extending transversely from this bar is a cross-head number 14. Adjustably mounted on the cross-head 14 of the printing press are two block numbered 15 secured to the cross-head by the set screws 16. In the preferable form of base plates shown in the drawings the base plate may be raised or lowered by means of the screw threaded rod numbered 17 in the drawings, which rod runs through the block 15 of the printing press, as shown in the drawing, and these base plates may be adjusted toward and from each other by sliding the blocks on the printing press numbered 15 on the cross-head of the printing press numbered 14. At the end of the curved base plates is a series of feeding fingers capable of vertical movement and having feeder points at their upper ends. These are shown in the drawing and numbered 20. The finger points are adjusted relative to the base plate by set screws 23 as shown in the drawings. In practical use the books or pamphlets to be printed or fed are placed upon the curved base plate, and they will obviously assume a curved position and their upper edges will engage each other, and many articles so placed on the curved base plates will stand spaced apart from each other at their longitudinal centers, and all articles when placed thereon will engage each other more firmly at their upper edges than at their longitudinal centers. When the base plate is moved forward towards the feed rollers, the feeder fingers will engage the lower book, pamphlet, or article lying thereon, and this article will be carried on the base plate toward the feed rollers, and as the book, pamphlet, or article to be fed enters between the feed rollers it will be flattened out, so it will enter between the printing rollers in flat position. It is stated in the specification for letters patent that a number of advantages are gained by having the hopper made in curved shape instead of flat, one of these advantages being that the feeder fingers will more readily enter between the books or pamphlets on account of the fact that their central portions stand spaced apart, and another advantage is that the books or pamphlets will slide relative to each other more readily because the edges only thereof are in engagement with each other.

It will thus be seen that the invention consists of a curved reciprocating base, curved transversely of its path of travel, with feeder fingers at one end thereof to expel the lowermost article thereon. After the patent in suit was issued, appellant advised appellee's general manager, Tomlinson, that the device was in operation in Chamberlain Printing Company's plant at Des Moines, Iowa. This party went to see it, and at once expressed a wish for a license. These negotiations were later continued by mail and again orally. The same

party, after he had seen the patented device, ordered a drawing thereof made called "assembly drawing Woman's World machine," with the purpose of having a device like appellant's put upon the "Woman's World" machines, and did so. Appellee claims to have been unable to make appellant's device work well upon the "Woman's World," because the leaves would catch on the gate. In the meantime, having failed to come to terms with appellant as to a license contract, appellee consulted counsel, and was advised that appellant's patent was not valid as to its broad features, because of the proceeding in the Patent Office and the prior art. Appellee thereupon proceeded to appropriate the main features of the patent. It claims to have found that appellant's theory of resting the edges of the articles in the hopper, so as to provide space between the two lower articles and permit the insertion of the feeding points therein, was wrong in theory as to the work on the "Woman's World." It therefore, among other changes, lessened the curve of the base plate, so it contends, which it made in one section, in order, it asserts, that the articles in the hopper might avoid spacing, and provided a beveled block in front of the feed gate, and other means to force the bottom article against the mass above so that it would not catch on the gate, using the curved base only as a means for imparting stiffness to the sheet so that it would yield to the push of the feeding point, and making the finger contact with the edge of the article to be protruded rather than enter the space above it. The beveled block is about one-eighth to one-sixteenth of an inch high. The feeder point elevations, too, are very slight. Other minor changes were made in adjusting the device to the "Woman's World" needs. There is nothing in the specification, drawings, or claims of the patent which prescribes the degree of curvature of the base plates, except the description of the results to be attained, such as spacing. In rejecting original claims 1, 2, 3, and 4, the examiner cited a number of patents in the prior art. None of these are in the record, nor does it appear in just what respects the examiner found anticipation, except, as stated by him, that the reciprocating plate of Sullivan and the reciprocating separator of Wright, are curved. The trial court found there was no infringement but did not pass upon the validity of the patent in suit. The bill was dismissed for want of equity.

Thomas A. Cheshire, of Des Moines, Iowa, for appellant.

Frank T. Brown, of Chicago, Ill., for appellee.

Before BAKER and KOHLSAAT, Circuit Judges.

KOHLSAAT, Circuit Judge (after stating the facts as above). [1] Unless there is novelty in the combination of a reciprocating, concavely curved base plate, curved transversely of its path of travel, with means for engaging the lowermost article in the hopper and for adjusting the parts of the base plate toward and from each other, appellant's device is devoid of novelty. The curved reciprocating base plates, curved transversely of their line of movement, constitute the genius of the invention. If there was no joint invention, then also the patent is void.

It will be observed that the original claims 2 and 3 were indefinite in form for the want, among other things, of a clause requiring the base plate to be curved transversely of its path of travel. In the absence of the prior art, we may well assume that this alone may have differentiated them from the references in the patent office. Comparison of them shows that they failed in other respects to properly describe the invention for the purposes set out in the specification. New claim 1 is simply an amplification of original claim one, which

makes reference to the specification instead of making a full recital, and in other particulars. We do not consider the statement of claims 1 and 2 as to spacing apart as functional. It is a matter of common knowledge that the placing of leaves or pamphlets in a concave position has a tendency to engage the edges of the articles with the curved sides of the base plate, and to a degree release the lower article along its longitudinal center from the bulk. This is true of any appreciable curve, the spacing diminishing with the decrease of the curve. The statement of claim 1, "so that articles to be printed resting thereon will be in curved positions with their side edges elevated and so that the lower one of said articles will have its longitudinal central portion spaced apart from the article above it," is therefore a mere declaration of what the effect of a curve is, and in no sense proclaims a function. Were the claim to call for a certain degree of curvature to produce a certain definite effect, it might be objectionable. We conclude that the difference between claim 1 as allowed and original claim 1 is simply one of form, and does not effect an abandonment of any of the essential features of the original claims, by the claims as allowed, and do not consider the objection well taken. We are, however, of the opinion that the changes in the form of the original claims as disclosed in the new may well, in the absence of the prior art, be deemed to have removed whatever of anticipation the examiner found in the prior art. What were the character and form of the reciprocating curved plate of Sullivan and the reciprocating separator of Wright, we are not advised. Presumably they were not deemed of importance in the present suit.

While, of course, curved receptacles for holding pamphlets and the like, in connection with printing devices, are not new, yet there would appear to have been something new in the combination of the patent. Appellee's manager seized upon the idea with avidity. It operated successfully at high speed, doing the work of a number of human hands. With some classes of work it seems to have needed further adjustment, such as the work on the "Woman's World," but as a concept it took the field. It does not appear that it had ever been practically applied to the printing art. We are satisfied from the record that the idea worked a great improvement in labor saving, and has been of real value. The basic idea was the combination of the curved reciprocating base plates curved transversely of their path and having finger points to expel the lowermost article. These we consider somewhat broadly patentable in combination, sufficiently so to dominate ordinary means for effectuating them, with a liberal range of equivalents.

[2, 3] We are not impressed with appellee's contention that the invention was not a joint one. That both patentees worked upon the combination and contributed ideas which were incorporated therein is plainly disclosed in the record. The combination is a unit. Each element pervades the whole of the basic features of the patent. Brewer contributed the adjustable feeder fingers and the curving of the base plates with its edges upward. Cheshire supplied the other items of

the combination. It requires clear proof to overcome the presumption of joint invention created by the grant. Priestly v. Montague (C. C.) 47 Fed. 650; Page Woven Wire Fence Co. v. Land (C. C.) 49 Fed. 936; 1 Hopkins on Patents, p. 27. It is not necessary that both patentees should have hit upon the same inventive thought at the same time. Worden v. Fisher (C. C.) 11 Fed. 505. The invention may be joint, though some of the elements are contributed by but one of the patentees. Quincy Mining Co. v. Krause, 151 Fed. 1014, 1017, 81 C. C. A. 290; Vrooman v. Penhollow, 179 Fed. 296, 102 C. C. A. 484. The objection is a formal one, and, in the present case, deemed not well taken.

Therefore we conclude that the patent in suit is valid, and proceed to the question of infringement. Appellee's contention that it avoided the patent by reducing the curve of its base plate is indefinite. There is no prescribed curve to the base plates of the patent. Appellee insists that its curve is merely for the purpose of giving a stiffening effect to the lower pamphlet or article to be advanced by the feeder fingers. This advantage, if it be one, would be more marked where the curve is considerable. If appellee's curve be less than appellant's the difference would be one of degree. There would still be a spacing effect. If appellee's device produces no such effect, then why is it found necessary to supply a beveled gate block, so as to press the lower article against the superincumbent mass? It is inevitable that the longitudinal center of the pamphlet or other article should be spaced by the concave base plate at least up to the gate block, which has an almost inappreciable elevation, and the object of which seems to be to flatten the articles so that they will pass under the so-called feed gate to the rollers. This block is not a part of the curved base feeding device, but is attached to a cross bar situated below the feeding device. Appellant provides for the feed to the printing rolls in a like flat condition by means of feed rolls, and the evidence shows that under ordinary conditions the provision is adequate. We find therefore that appellee's device used in the construction of the "Woman's World" has the spaced longitudinal center. The so-called gate block, if an improvement, is nothing more than that. The principle of operation is the same in both feeders.

Appellee claims that its feeder finger does not enter the space between the two lower articles in the hopper, but engages the body of the lower article. This finger is adjustable to meet the variation in thickness of the article to be advanced. If desirable, appellee's operator could adjust it within the space or at any operable point below the top of the article. It is nothing more than an equivalent of appellant's arrangement. The fact that appellant's curved base plates are made in three sections, while appellee's are constituted of one piece, does not constitute a patentable difference between the two or modify the combination of the patent. They operate in substantially the same way. Their functions are the same, and the concept of the two is practically identical. It is urged that the "Woman's World" device was so modified as to come within the patent, if it did so come, by parties

other than appellee, after it was installed. This contention we find to be not sustained. We are clearly of the opinion that appellee has appropriated the substance of appellant's invention. Whether or not it has made improvements thereon need not be now passed upon. That can be taken into consideration on the accounting.

The decree of the District Court is reversed, with direction to grant the injunction as prayed and order an accounting.