WORDEN and others *v.* FISHER and others.

*(Circuit Court, E. D. Michigan.)*

1. PATENT FOR INVENTION—JOINT INVENTORS—PROOF.

If the facts show that a patent is the result of the mutual contributions of two persons, they should be treated as joint inventors, and a joint patent should be taken out. Such patent stands for and must be supported by a joint invention; but the court would not be justified in annulling such patent without clear proof that the patentees are not joint inventors.

2. SAME—SUGGESTIONS—JOINT PATENT, WHEN TO ISSUE.

A mere suggestion, not acted upon by the person making it, but carried out and perfected by another, will not entitle the former to be considered a joint inventor. But it is not necessary that exactly the same idea should occur to two persons at the same time, and that they should work out together the embodiment of this idea in a perfected machine, to constitute them joint inventors. If an idea is suggested to one, and he even goes so far as to construct a machine embodying this idea, but it is not a completed and working machine, and another person takes hold of it, and by their joint labors one suggesting one thing and the other another, a perfect machine is made, a joint patent may properly issue to them. If, upon the other hand, one person invents a distinct part of a machine, and another person invents another distinct and independent part of the same machine, then each should obtain a patent for his own invention.

3. REISSUE—IMPROVEMENT IN WHIP HOLDERS—VALIDITY.

Letters patent No. 8,581, reissued to Henry M. Curtis and Alva Worden, for an improvement in whip holders, is valid except as to the fourth claim.

In Equity.

This was a suit brought to recover for the infringement of letters patent No. 8,581, reissued to Henry M. Curtis and Alva Worden for an improvement in whip holders. The improvement consisted substantially of a whip holder divided throughout its length into two parts, of a double conical shape, hinged together in the center by a pivotal joint, so that the holder will disclose a large opening for the reception of the whip, and will be closed at its top around the whip when the same is inserted into the holder. The defences were:

(1) That Curtis and Worden were not the first and joint inventors, but that Curtis alone, or in conjunction with one Nellis, was the inventor of said whip holder; (2) that the device was known and used long prior to complainants' patent by Erastus W. Scott, of Wauregan, Connecticut; (3) that this patent is an infringement of reissued patent No. 5,400, issued to said Scott, and that the additions to or alterations in said Scott's patent exhibit no exercise of inventive faculty.

*Sprague & Hunt*, for complainants.

*J. P. Fitch*, for defendants.

BROWN, D. J.  This suit is prosecuted by the defendants in the case of *Searls* v. *Worden, ante,* 501, to recover damages of the defendants, who are selling whip sockets made by Searls, and purporting to be constructed under the patent issued to Scott, but which were in almost exact imitation of the whip sockets made by the complainants, and which are confessedly an infringement of their patent, if the same be valid.  In *Searls* v. *Worden* we held that the Scott patent was valid, and that complainants were infringers; but it seems now that Searls has abandoned, to some extent at least, the manufacture of whip sockets of the particular form shown in the specification and drawings of the Scott patent, and is making them after the Worden patent, claiming the latter to be illegal and void.

Now, although, as was held in *Searls* v. *Worden, supra,* the Worden patent contains the underlying principle of the Scott patent, and is to that extent an infringement, still there are improvements in the Worden patent, in splitting the entire socket into two parts and using one as a lever, which I think are patentable, and would justify the charge of infringement against the defendants, provided the patent in other respects be valid.  The main ground upon which this case is contested is that Curtis and Worden were not joint inventors of this device, but that the invention was made by Curtis alone, or by Curtis and one Nellis.  There can be no doubt that if the circumstances are such as to show that two persons both contributed to an improvement, and such improvement is the result of mutual contributions of the two, they are to be treated as joint inventors, and a joint patent should be taken out.  In such cases the joint patent stands for and must be supported by a joint invention, and as an error in this particular is fatal to the validity of the patent, I think it should be made clearly to appear that the patentees were not joint inventors, before the court would be justified in annulling the patent upon that ground.

So far as the participation of Nellis in this invention is concerned, the facts are substantially as follows: That in August, 1867, Curtis and Nellis, who were employed in the same shop in Ypsilanti as workmen in the manufacture of carriages, had a conversation together in relation to making an improvement upon whip sockets; that in the course of that conversation Nellis, holding in his hand a whip socket of the ordinary kind, (a short metal cylinder, or tube, · closed at the bottom and provided with fastening devices for attaching it to the vehicle,) suggested that a lever might be connected with it to hold the whip upright, and he put into it a stick to show how

the lever could be made to act by throwing it out at the bottom and in at the top. Curtis does not state it quite so strongly, but testifies that Nellis made the suggestion of getting up something so "that when the whip struck the bottom it would be clamped at the top." "I did not speak, but acted; but the hint which he gave me was nothing to show how to make it; until after I had experimented." Curtis seems to have acted upon this hint, and went on and made a model of iron in two parts, hinged together, with a wedge at the bottom. Upon the Sunday following this conversation they were together again in their shop, in company with the hands, when Curtis exhibited the model, which Nellis says he recognized as embodying substantially the idea he had suggested to Curtis; but he evidently treated it as of little or no value, for whatever interest he had in the invention he gave up to Curtis on condition that he would furnish beer for the company.

Now, there is nothing further in this testimony than a suggestion upon the part of Nellis that the whip might be held firmly by means of a lever in the socket,—the very device for which Scott obtained his patent, and which is no part of the complainant's patent in this case. It was, at best, a mere suggestion, upon which Nellis never acted himself. It was as if some one had suggested to the inventor of the telephone the possibility of transmitting voice over a wire with the aid of electricity. It was rather a suggestion of a result to be accomplished, than of the means of accomplishing it, and therefore not patentable. He had nothing to do with the making of either of the models in which the invention was afterwards embodied. He made no suggestion of splitting the socket in two and using the outer half as the lever, and did not seem to regard himself as having anything to do with the invention of the whip socket produced by Curtis. On the contrary, he saw the model which Curtis and Worden were preparing to send to Washington, stood by and allowed them to go on, make their application, and obtain their patent without objection. Under these circumstances it seems to me that he cannot be treated as a joint inventor of this device. His suggestion was rather of the lever which Scott was then working upon in Connecticut, and for which he shortly afterwards obtained his patent.

Was Mr. Curtis the sole inventor of this device, or did Worden participate with him? Upon this subject Curtis testifies that upon the Monday following the Sunday already spoken of he went into his shop to work, and threw the iron model he had constructed under the

bench, but the more he thought of it the better he was satisfied that it could be made useful. He then went to work and made a copper model much like the one he had already constructed, but instead of inserting wedges to throw the bottom out as the whip was inserted, he made it to bulge in the middle by hammering the copper, thus making it considerably larger in the middle than at either end. The effect of this was to bring the two halves together at the top as the whip was inserted. This model, however, showed that the sides were straight; that the ears were cut on one side and riveted to the other to form the joint; that one side lapped over the other when the ends were brought together; and that no means were provided for fastening the socket to the dash-rail of the carriage. In fact, it was far from being a complete or useful machine. In this condition he took it to Alva Worden, who was acquainted with the patent business, and was considered a good judge of such matters. He looked it over and replied that if it could be perfected there might be something in it, and expressed a willingness to assist in completing it and getting it patented. Worden and he then began constructing wooden patterns together. At Worden's suggestion the sides were cut away, the hinges or ears were put upon both parts, and these parts were so constructed that they shut square against each other, instead of slipping by, and a bottom was inserted so that a whip could not pass through. Several of these models were made by them jointly, and after a satisfactory pattern had been worked out in wood, Worden took it to Detroit to get a casting made for the patent-office at Washington. Mr. Worden also suggested several methods of fastening it to the dash-board, although, in the view I take of the loop, this is not material. An arrangement was made between them that if Worden got it patented he was to pay the expense of the patent for a half interest in it. Under this state of facts the question arises whether Worden contributed anything which could be called inventive skill to this machine.

To constitute two persons joint inventors it is not necessary that exactly the same idea should have occurred to each at the same time, and that they should work out together the embodiment of this idea in a perfected machine. Such a coincidence of ideas would scarcely ever occur to two persons at the same time. If an idea is suggested to one, and he even goes so far as to construct a machine embodying this idea, but it is not a completed and working machine, and another person takes hold of it, and by their joint labors, one suggesting one thing and the other another, a perfect machine is made, a joint pat-

ent may properly issue to them. If, upon the other hand, one person invents a distinct part of a machine, and another person invents another distinct and independent part of the same machine, then each should obtain a patent for his own invention. I am inclined to think that this last suggestion applies to the loop in this case. It appears to have been the sole invention of Worden. But when Mr. Curtis placed the two models in Worden's hands they were absolutely useless for the work for which they were designed, and the work subsequently done in completion of the device was, as it seems to me, with the exception of the loop, so far the joint product of their inventive skill that it would be difficult to say that each part was patentable in itself. Curtis could not have obtained a patent for the machine as it was when he first consulted Worden, nor could Worden have obtained a patent for anything he did, irrespective of the labor previously bestowed by Curtis. Upon the whole it seems to me, as it did to the commissioner, that it is a proper case for a joint patent. The consequence of a different ruling would be the utter destruction of the patent upon a technicality. I should be unwilling to take this position without evidence of clear error on the part of the commissioner.

The fourth claim of the reissued patent is for a whip holder composed of two parts, of double conical shape, hinged together as described, and wherein one is provided with loops or fastenings, by means of which the holder is attached to the carriage or dash-board, substantially as specified. I feel constrained to hold that this claim is void, for the following reasons: (1) Because there was no invention in attaching loops to the socket. These loops were old devices, and had been in common use as fasteners upon whip sockets long before 1867. (2) Because the loops were added by Worden alone, without any agency of Curtis, and if there was any inventive skill in attaching them to the socket, it was that of Worden alone. (3) There was no claim made for the loops in the original patent, and I am inclined to think their reissue to that extent is void. In other respects I think the reissue was valid; for the single claim in the original patent are substituted three claims in the reissued patent which are much more definite and particular. But it seems to me entirely clear that there is no such expansion of the original claim as should invalidate these. There is no evidence that complainants' patent is anticipated, except by the wooden devices of Scott, from which no definite results were obtained, and which was an

abandoned experiment. He afterwards constructed an entirely different model, upon which he obtained the patent which we have already adjudged to be valid in the case just decided.

As there is no denial of the infringement in this case, it results that the complainants are entitled to an injunction and decree, with the usual reference to a master to assess damages.