## HEULINGS et al. v. REID.

(Circuit Court, E. D. Pennsylvania. November 14, 1893.)

### No. 51.

1. PATENTS—INVENTION—ANTICIPATION—MILK COOLERS.
    The Evans & Heulings patent, No. 471,974, for a milk cooler, consisting of a combination of corrugated cooling plates and an intermediate filling of metal, limited to the space between and uniting the plates, is void, as to the sixth and seventh claims, for anticipation and want of invention.

2. SAME—JOINT PATENTS—VALIDITY.
    A joint patent is invalid as to a feature previously invented by one of of the patentees, and which is not a necessary part of the device jointly invented.

In Equity. Suit by Samuel M. Heulings and Elwood Evans against Alban H. Reid for infringement of a patent. Bill dismissed.

Strawbridge & Taylor, for complainants.
Philip T. Dodge, for defendant.

BUTLER, District Judge. The suit is on patent No. 471,974, issued to Evans & Heulings, dated March 26, 1892, for improvements in milk coolers. The sixth and seventh claims only are involved. They are as follows:

"(6) A cooling apparatus, comprising plates corrugated transversely and supported in operative position by means located between the plates, whereby the ends of the corrugations on their outer surfaces are left free and unobstructed for cleaning purposes, substantially as specified. (7) The combination of corrugated cooling plates and an intermediate filling of metal, limited to the space between and simultaneously uniting the plates, substantially as specified."

These claims cover the same matter. The plaintiffs' expert says so, and their counsel admit it.

In view of the former state of the art, we think they embrace nothing new in a patentable sense. The plaintiffs' description of coolers in common use previously may be adopted with slight alteration. Those of the general type of that disclosed in the patent consisted of two vertically erected plates of sheet metal correspondingly corrugated transversely to their height, and so connected at their top, bottom, and sides as to constitute a closed receptacle for a liquid refrigerant, with a milk distributing trough above the plates, and a collecting trough below them. In operation, liquid inlet and outlet pipes being in communication with the space between the plates, iced water or other cold liquid is caused to circulate through the said space so as to chill the plates, and the milk to be treated is delivered to the distributing trough, from which it escapes in small streams or drops, and descends upon and trickles in a thin film down and over the outside faces of the water-cooled corrugated plates into the collecting trough below, from which it is subsequently removed for use. Generally in milk coolers of the foregoing type as constructed prior to the invention of the patentees the means employed to support the corrugated plates in position, to secure them in proper relationship to each other, and to her-

metically close the space between the side edges or margins of the plates so as to prevent the lateral escape of the cooling fluid, consisted of straight-sided vertical end standards or plates, of width in excess of the breadth of the two corrugated plates from crest to crest, and butted against the ends of the plates. In this arrangement the closing up of the ends of the grooves of the corrugated plates by said standards occasioned the formation at the juncture of the standards and plates of angular recesses designated pockets; and in the use of such coolers it was found impossible, in cleaning the structure with ordinary appliances, to gain such access to the corners of the pockets as would enable the user to thoroughly cleanse them, with the result that such milk as in the cleaning of the device escaped removal remained to deteriorate and taint the milk subsequently subjected to the action of the cooler. To remove the difficulty of cleansing the grooves at the standards the plaintiffs severed the connection between the plates and standards, leaving a space between, and closed the ends of the plates by other means. They accomplished this by simply moving the standards back, and closing the openings thus left by solder or similar material, as described. In this we are unable to see any evidence of invention. Its accomplishment required nothing more than a slight mechanical change in the structure, such as any skilled workman in the art would have understood how to make. The same result would have been attained by simply cutting the standards down at the edges, so as to make them correspond with the corrugations of the plates, and leave the ends of the grooves open. The difference between this and placing the standards thus reduced *between* the ends of the plates would be immaterial. But the plaintiffs have not even the merit of being first to do what they did. The cooler described was the one in general use, but the art had advanced beyond it before the plaintiffs' alleged invention. In August, 1890, the defendant moved the standards back, and closed the ends of the plates; and coolers so made were sold and used. It is unimportant that he closed the space thus left open between the plates by folding their ends over, and sealing them. There is no substantial difference between this and closing the space with solder, as the plaintiffs describe. If folding the ends and sealing them down did not produce sufficient rigidity, as the plaintiffs urge, no invention would be required to increase it by the insertion of metal between the plates, or by other means. It further appears, however, that Heulings, one of the plaintiffs, did the same thing in 1890, by precisely the same means which the plaintiffs employ. Mr. Heulings himself testifies to this, and he is uncontradicted. The fact that his name is included in the patent is unimportant. Evans can derive no benefit from his invention, and a joint patent for it cannot be sustained. As he testifies, Evans had no connection with it. It was his own work exclusively. It is not a necessary part of the cooler which they jointly invented, but is as applicable to any other cooler as to this. If patentable, he alone was entitled to the patent. It was an independent invention, standing by itself, and could be applied to any

other description of cooler. The law respecting joint inventions and patents need not be discussed. Some pretty nice distinctions have been drawn by the courts in this regard, and a little confusion and uncertainty created. The facts involved here, however, seem to remove all doubt.

The Lawrence patent of 1876, and the Chambers patent of 1874, also, we think, suggest quite plainly all the plaintiffs have done.

The bill must be dismissed.