McMICHAEL & WILDMAN MFG. CO. v. RUTH et al.

(Circuit Court of Appeals, Third Circuit. March 1, 1904.)

No. 37.

1. PATENTS—SUIT FOR INFRINGEMENT—TITLE TO SUPPORT.

An executory agreement by patentees to transfer to a third person an interest in patents not identified therein does not operate as an assignment, and cannot be set up by defendants to impeach the title of an assignee of the patent in a suit for its infringement, to· which such third person is not a party.

2. SAME—INVENTION.

The fact that an expert, with a patent before him, might be able to build up the structure covered thereby, by selecting and adapting appliances theretofore known, does not overcome the presumption of invention arising from the granting of the patent, where neither the same combination in its entirety nor the same mode of operation had previously been described or known.

3. SAME—INFRINGEMENT—KNITTING MACHINES.

The McMichael and Wildman patent, No. 500,151, for an automatic rib-knitting machine, covers a combination of novelty and utility, and discloses invention. Claims 1 and 2 construed, and *held* infringed.

Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania.

For opinion below, see 123 Fed. 888.

Ernest Howard Hunter, for appellant.

Joseph C. Fraley, for appellees.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

DALLAS, Circuit Judge. The appellant was plaintiff in the court below, and the appellees were defendants. The suit was begun by bill in equity, which charged the infringement of letters patent No. 500,151, dated June 27, 1893, granted to Abner McMichael and Frank B. Wildman, for "automatic rib-knitting machines." The answer alleged, inter alia, that the complainant was not the owner of the entire patent, but that a one-third interest therein was owned by one Lewis Jones, and the point presented by this defense, though not dealt with by the court below, confronts this court at the outset.

The only documentary evidence which was adduced for the purpose of showing title in Jones is as follows:

"Bristol, Pa., 2/18/1889.

"We the undersigned, F. B. Wildman of Bristol, Bucks Co., Pa., and Abner McMichael, of Philadelphia, Pa., do agree, in consideration of the fact that Lewis Jones of Philadelphia has been at the expense of working out an improvement invented by us. on automatic circular sleavers to transfer to said Lewis Jones one third (⅓) interest in all of the improvements patented thereon also to transfer to said Lewis Jones one third of any patent which may be issued to us in the future, provided same or any portion thereof has been developed at the expense of said Lewis Jones. Signed this ———— day of February 1889.

"Abner McMichael.
"Frank B. Wildman.

"Witness: ————."

This instrument is wholly executory. It is not an immediate assignment, but an agreement "to transfer." It does not ·identify the pat-

ent or patents to which it relates, and the obligation it imports is qualified by its proviso. It is obvious, therefore, that it did not convey the legal title to one-third of any patent, and whether or not Jones himself could, upon this writing, together with extrinsic evidence, successfully invoke the aid of a court of equity to establish his supposed interest in this particular patent, is a question which is not now determinable, for he is not a party to this suit. Consequently, this appellant, who in fact holds the legal title to the entire patent, cannot be required to litigate that question at the instance of parties other than Jones, whom it charges with its infringement.

We have not been convinced that the presumption of validity which arises from the grant of a patent was rebutted in this case. Upon this subject "the defendant's proposition is that the substitution made by the patentees did not require invention, but was a mere exercise of selection, wholly within the domain of mechanical skill"; and if it were true that what was done by McMichael and Wildman did not require invention, but only the exercise of mechanical skill, the conclusion which the appellees ask us to deduce from this proposition would, of course, be inevitable. But, in our opinion, the creative faculty of the inventor, and not merely the ingenuity of the skilled mechanic, was exercised in producing the patented combination. This art had been already highly developed, and these patentees brought to it nothing of a fundamental character, but they did, by their "improvements," create a construction which had never before existed, which has proved to be commercially successful, and the novelty and utility of which are especially and quite persuasively indicated by the fact that (as will presently be seen) the appellant itself has appropriated it. The claims involved are:

"(1) In a knitting machine, the combination of a stationary dial carrying the needles, a rotary cam for operating said needles, and having one portion thereof movable for the purpose of varying the amount of reciprocation of the needles, a crank shaft rotating with said movable part of said cam, rotable supports for the cam and crank shaft, connections between said cam and crank of the crank shaft whereby the latter moves the former, a second shaft geared to the first mentioned shaft and adapted to rotate simultaneously in an opposite direction, arms secured to the respective shafts at different elevations so that when one is thrown in the other is thrown out, pattern mechanism, and projecting parts moved by the pattern mechanism for bringing said parts into the path of either of the arms for operating said arms, respectively, at different times.

"(2) In a knitting machine, the combination of a stationary dial carrying the needles, a rotary cam plate having a cam for operating said needles of the dial, and having one portion of the cam movable for the purpose of varying the amount of reciprocation of the needles, a crank shaft rotating with said movable part of said cam, a rotating support for the cam plate, a connection between said cam and crank of the crank shaft whereby the latter moves the former, a second shaft mechanically connected to the first-mentioned shaft and adapted to rotate simultaneously in an opposite direction, arms or projections secured to the respective shafts at different elevations so that when one is thrown in the other is thrown out, pattern mechanism, and projecting parts moved by the pattern mechanism, for bringing said parts into the path of either of the arms for operating said arms respectively at different times, and a removable ring piece adapted to rotate with the cam and carry the said shafts."

Attentive examination of the testimony and exhibits has fully satisfied us that although it is perhaps possible for an expert, having the patent in suit before him, to build up the structure covered by these claims, by selecting and deftly adapting appliances theretofore known, "yet it would still be true that neither the same combination in its entirety nor the same mode of operation" had previously been described or in any manner exemplified. Parks v. Booth, 102 U. S. 96, 26 L. Ed. 54; Bates v. Coe, 98 U. S. 31, 25 L. Ed. 68. In Mast, Foos & Co. v. Stover Manufacturing Co., 177 U. S. 492, 20 Sup. Ct. 708, 44 L. Ed. 856, cited for the appellees, the combination of the patent there in question had been in prior use, and what was decided was that it did not involve an exercise of the inventive faculty to employ the same combination for a different purpose.

The decree of the Circuit Court was based wholly on its finding that the defendants below had not infringed, and upon that subject the learned judge said:

"The precise point at issue between the parties appears in the following question and answer from the cross-examination of defendants' expert: '(114) If the court should be of opinion that the connection between the rock shaft and the second shaft in defendant's machine is a geared connection, this particular combination of elements [i. e., the combination described in complainant's patent] is found in defendants' machine? Ans. With the assumption made in the present question that the pin and slot connection found in defendants' machine is identical with the geared connection referred to in the patent in suit, the combination of elements specified may be found in defendants' machine.' In view of this definite statement, a detailed description of the defendants' machine is unnecessary. It has a pin and slot connection between the shafts, instead of the connection described in the claims of the patent, and, considering the prior art, I am of opinion that the complainant cannot successfully assert that the device employed by the defendants infringes the patent in suit. * * * The characteristic of the complainant's machine is that it employs gears as the connection between the crank shaft and the second shaft, whilst the defendants do not employ gears."

We are unable to concur in the view which, as appears from this extract, was taken of the question of infringement by the court below. In our opinion, the restrictive construction of the claims upon which it was founded was not warranted by the terms of the patent, nor demanded by the prior state of the art. Neither of these claims contains the word "gears." In the first, the phrase is, "a second shaft geared to the first-mentioned shaft"; and in the second it is, "mechanically connected with the first-mentioned shaft." So far, therefore, as the first claim is concerned, there is nothing in its terms to justify its restriction to any particular gears; and in the specification it is said: "We do not limit ourselves to the mere details of construction, as they may be modified without departing from the invention." The first claim, therefore, does not appear upon the face of the patent to be limited to the gears in the drawings, but covers any geared connection capable of performing the purposed function; and that the second claim, in which the words "mechanically connected" are used, includes any mechanical connection by which the required movements may be imparted by either shaft to the other, seems to be too plain for argument. Nor did the prior art necessitate the narrow construction which was put upon these claims by the court below. The appellees'

expert in effect testified, and we think with accuracy, that there had not previously existed any combination including each of the elements of either claim, and, accepting this statement, it follows that, if the construction of the appellees does embody those elements in the same combination, it is an infringement. National Cash Register Co. v. American Cash Register Co., 53 Fed. 367, 3 C. C. A. 559. Therefore the only substantial question which remains for consideration is that which has been heretofore adverted to, and which was regarded by the learned Circuit Judge as presenting the precise point at issue, viz.: Is the connection between the rock shaft and the second shaft in the appellees' machine a geared connection? Defining a geared connection as, with reference to claim 1, we have already defined it, we are of opinion that it is. As is said in appellant's brief, the inherent character of the appellees' connection is not changed by calling it "a pin and slot connection." Although the tooth which projects from one shaft is provided with a pin which engages with teeth projecting from the other, this does not alter the true character of the mechanism or its mode of operation. The requisite function is performed by the pressure of a tooth or projection of one shaft on a tooth of the other shaft, and hence the connection is certainly mechanical, and the understanding of appellant's expert that it is also a geared connection accords with our construction of that term, and is, we think, correct.

Having reached the conclusion that the claims in controversy are valid, and being of opinion that the Circuit Court erred in its finding that they had not been infringed by the appellees, the decree appealed from must be reversed, and the cause will be remanded to that court, with direction to enter a decree in the ordinary form, and upon both claims, in favor of the plaintiff below.