HESS–BRIGHT MFG. CO. et al. v. STANDARD ROLLER BEARING CO.

(Circuit Court, E. D. Pennsylvania. March 10, 1910.)

No. 233.

1. PATENTS (§ 32*)—INVENTION.
     The fact that an expert, with a patent before him and by the use of the information suggested thereby, is able to construct the patented device from that of a prior patent, does not overcome the presumption of invention arising from the granting of the later patent.
     [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 35, 36; Dec. Dig. § 32.*]

2. PATENTS (§ 328*)—INVENTION—BALL BEARINGS.
     The Conrad patents, No. 822,723, for a ball bearing, and No. 838,303, for a method of manufacturing and assembling such bearing, cover a device and mode of assembling the same which are novel and of great utility, and disclose invention.

In Equity. Suit by the Hess-Bright Manufacturing Company and another against the Standard Roller-Bearing Company. On final hearing. Decree for complainants.

See, also, 171 Fed. 114.

Dwight M. Lowrey and Robert Fletcher Rogers, for complainants.
Augustus B. Stoughton, for defendant.

HOLLAND, District Judge. Two patents, No. 822,723, granted June 5, 1906, and No. 838,303, granted December 11, 1906, to Robert Conrad, were transferred by him to the Deutsche Waffen und Munitions-Fabriken, a German Company, by assignment duly recorded in the United States; the Hess-Bright Manufacturing Company being

the sole licensee in this country. Suit was instituted for the infringement of claims Nos. 2, 8, and 9 of the first and of claim No. 1 of the second. The defendant makes the sole defense of lack of invention. Hence the only question for the court is whether or not the three claims of the first and the one claim of the second patents are valid; that is to say, do they cover patentable subject-matter, and did it involve invention to produce the bearing in view of the prior art?

Patent No. 822,723 is for an improvement in ball bearings. There are two grooved rings, the grooves facing each other, so as to form a channel or raceway for the balls; the sides of the grooves are arranged to overhang the balls, so as to prevent the lateral displacement of the rings; and, further, that the sides of the grooves are uninterrupted throughout their circumference. The parts are interlocked with each other, so as to form a unitary structure, and at the same time all of the surfaces which are in rolling contact are continuous and uninterrupted, so that the wear upon the parts will be uniform. The balls are introduced by eccentric displacement; in fact, this seems about the only practical way it is possible to assemble the parts.

The claims, which the bill avers have been infringed by the defendant, are as follows:

"2. A ball bearing including two concentric rings having opposing grooves on their adjacent faces, the sides of said grooves engaging the balls to prevent substantial lateral movement, said sides being uninterrupted throughout their circumference and adapted to admit balls to the grooved space between them by displacement of the rings eccentrically to each other."

"8. A bearing comprising two concentric rings, balls between said rings, each. ring having a groove both sides of which overhang said balls and are continuous and practically integral throughout their circumference, the number of balls being such that they can be inserted in the space between the rings when the latter are displaced from their normal position, and means for distributing the balls throughout the length of the groove, whereby the two rings are held together against axial displacement by the engagement of the balls with the overhanging walls of the grooves and the parts are held together so as to form a unitary device.

"9. A bearing comprising two concentric rings, a and b, balls, c, between said rings, each ring having a groove both sides of which overhang said balls and are continuous and practically integral throughout their circumference, the edges of said sides being separated so far from each other that by displacement of the rings eccentrically a limited number of balls may be inserted between them, and distributing devices adapted to be introduced between said edges and into the spaces between said balls when the rings are restored to concentric position, whereby the two rings are held together against axial displacement by the engagement of the balls with the overhanging walls of the grooves and the parts are held together so as to form a unitary device."

Many patents have been issued for ball-bearing devices, which have not been entirely satisfactory, for the reason that the tracks or ways were interrupted, and the balls consequently could not travel freely therein. It was old to have inner and outer rings with opposing grooves, but the sides of these grooves were interrupted in one way or another to permit the introduction of the balls. In some cases filling openings were provided, and in some instances these were filled up or plugged after the balls had been introduced in order to prevent their escape; but these prior devices were defective, in that the raceways would crumble or wear at the interrupted parts of the raceway, and

then the injured balls would cause undue wear to the remaining portions of the raceway, and thus the bearing suffered a rapid depreciation, and often an entire failure in a comparatively short time, and where the filling openings were plugged to prevent the escape of the balls the plugs could not be given precisely the same temper as the rings forming the remaining portions of the raceway, and unequal wear would ensue, which resulted in injury to the balls and raceway, and an undue shortening of the life of the bearings. These bearings could safely be subjected only to light loads, and were entirely unsatisfactory, and not fitted for use in heavily built, rapid-moving vehicles.

The Lechner patent, referred to and set up by the defendant as an illustration of the prior art, is a fair illustration of the attempt to produce a bearing with a continuous and uninterrupted raceway. The filling opening in this patent extends entirely to the bottom of the raceway, and the sides are interrupted by the filling opening cut therein. It does not satisfy the demand in the art for a continuous and uninterrupted raceway. And the Pettee patent, which is for a roller bearing, shows plainly upon its face that the inventor did not have in mind the principle embodied in the complainant's patent. The inventor undoubtedly was striving to construct a device for a roller bearing with a continuous and uninterrupted raceway for the rollers; but he failed, in that the outer casing is divided into two parts, in order that the bearing may be assembled, and this, of course, produces the interrupted raceway.

It is true the defendant constructed a model of the Pettee device, which can be assembled by eccentric displacement; but it was acknowledged on the part of the defendant's expert that it was not constructed in exact accord with the dimensions set forth in the patent, but had been adapted to be assembled in accordance with the method found in the complainant's patents. In other words, it is now ascertained that the Pettee device can be constructed and assembled in accordance with the methods of manufacturing and assembling the defendant's roller bearings, but only by the use of the information suggested by the complainant's patents. This alone, however, will not be permitted to invalidate the claims of complainant's patents.

In McMichael & Wildman Manufacturing Co. v. Ruth et al., 128 Fed. 706, 63 C. C. A. 304, the court said:

"The fact that an expert, with a patent before him, might be able to build up the structure covered thereby, by selecting and adapting appliances theretofore known, does not overcome the presumption of invention arising from the granting of the patent, where neither the same combination in its entirety nor the same mode of operation had previously been described or known."

The patentee has evidently accomplished what others have been striving to attain, but have failed. As has been said, these patents have "converted a theory into a fact." It was apparently a very simple change, but it converted "imperfection into completeness." The advantages attained are aptly stated by complainant's expert:

"All of these disadvantages of the prior constructions are overcome by the improvement of the patents here in suit. By reason of the fact that the sur-

faces of the grooves on which the balls travel are continuous and uninterrupted, the wear of these surfaces is uniform, there are no edges to crumble or fracture or against which the balls may strike, the materials may be uniform and homogeneous throughout, and the rings may be uniform in cross-section throughout, so that they may be made relatively small in cross-section without danger of fracture. As a result the safe load-carrying capacity of the bearing is much greater, the life much longer, and the bearing can be mounted in any desired way, and is equally available whether the inner ring be stationary, or the outer ring be stationary, or both rings rotated. Moreover, the bearings do not have to be manufactured in sets having different features of construction adapting them for different situations or uses, and special care or skill does not have to be exercised in mounting them in particular ways with reference to the manner in which the load is to be applied; i. e., whether the inner ring or the outer ring is to be the stationary member and subjected to load only on one side. Furthermore, these bearings are capable of sustaining end thrust or a load applied in the direction of the axis from either side, as well as loads applied radially or at right angles to the axis."

The ball bearings manufactured in accordance with these patents have gone into use very extensively. It is conceded by all parties that it is the best device yet placed upon the market. The Pettee device has not been manufactured, which is one of the strongest facts to sustain the contention that it is not of much practical utility. However slight the difference, it is very evident that Conrad has solved the difficulties, and the objections to the ball bearings placed upon the market manufactured in accordance with the prior art, and he is entitled to the benefit of his invention.

The method patent, No. 838,303, was issued about six months after the article patented; the latter for a "method of manufacturing and assembling ball bearings." Claim 1 of this patent, which is infringed by the defendant, is as follows:

"1. The method of manufacturing and assembling a ball bearing into a unitary structure, the parts of which hold each other together, which consists in forming inner and outer rings having opposing grooves the sides of which are uninterrupted throughout their circumference, and which are separated by a distance less than the diameter of the balls when the rings are concentric, placing said rings eccentrically to each other to widen the space between said edges at one side to a width greater than the diameter of the balls, introducing through said space a limited number of balls, extending when in contact with each other only partly around the raceway formed by said grooves, and restoring the rings to concentric position and introducing spacers between the balls to distribute them substantially entirely around the raceway so as to prevent the rings from returning to the eccentric position."

It is very evident that the manufacturing and the assembling of this ball-bearing device by eccentric displacement is entirely new, as no other ball bearing has ever been made which could be entirely assembled in this way, resulting in making practical a continuous and uninterrupted raceway. The idea is novel and of great utility, involving invention.

It is ordered that a decree be entered for complainant, with costs to be taxed by the clerk.