AMERICAN PATENT DIAMOND DOP CO. v. WOOD et al.

(Circuit Court, E. D. New York. July 20, 1911.)

1. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—"DOP."
    The Loesser & Loesser patent, No. 573,672, for a "dop," to hold a diamond in position for polishing, *held* not anticipated, valid, and infringed.

2. PATENTS (§ 92*)—PERSONS ENTITLED—JOINT INVENTORS.
    That one of two joint patentees alone invented certain of the elements of the patented combination does not invalidate the patent.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. § 124; Dec. Dig. § 92.*]

3. WORDS AND PHRASES—"DOP."
    A "dop" is an implement for holding a diamond in position to polish the facets, the table, and the culet, in distinction from the harder or more violent processes of cutting the diamond.

In Equity. Suit by the American Patent Diamond Dop Company against Rawson L. Wood, St. John Wood, and Harry S. Wood. On final hearing. Decree for complainant.

Johnson & Galston (Clarence G. Galston, of counsel), for complainant.

Prindle & Wright (Edwin J. Prindle, of counsel), for defendants.

CHATFIELD, District Judge. [3] The complainant holds by assignment letters patent issued to Edward and Ernest Loesser upon the 22d day of December, 1896, No. 573,672, for a dop; that

is, an implement to hold a diamond in position for polishing the facets, the table, and the culet, in distinction from the harder or more violent processes of cutting the diamond.

The claims of the patent with which we have to do are as follows:

"2. A diamond-polishing dop, comprising a head provided with an inclined seat and having means for applying it to a diamond-polishing tool, a bifurcated holding-finger adapted, in connection with said seat, to establish three points of contact with the diamond, and means for securing and adjusting the holding-finger, substantially as set forth.

"3. A diamond-polishing dop, comprising a head having a recess and provided with means for application to a diamond-polishing tool, a removable shoe having a flange fitting said recess and provided with a cavity, and means for engaging the diamond and holding the same in the cavity of said shoe,"

—and in general describe a dop consisting of a metal head or bulb with a shank or shaft which by insertion in the polishing tool holds the dop in position. The recess in the head or bulb of the dop receives the lug or flange of a removable shoe, in which is a cavity for the actual placing of the diamond, while a bifurcated finger (capable of being raised or lowered by means of a set screw through the head or bulb of the dop, engaging with the shank of the finger) bears on the diamond in such a way as to secure a three-point contact between the two extremities of the finger and the recess in the shoe upon which the diamond is placed. The loosening of the set screw allows the turning of the diamond, and the bifurcation allows such contact with the skive as to polish either the facets, table, or culet of the diamond, as the case may be.

Claim 3 is more general than claim 2, and does not provide for the bifurcated finger, nor does it specify an inclined seat, but does provide for a recess with a removable shoe to fit the recess, with a cavity to hold the diamond, and means to hold the diamond in this cavity. This third claim will have to be borne specially in mind when we come to a consideration of the prior art, as its general language describes ideas substantially shown in Fig. 6 of the Hessels patent (infra), and this claim would therefore seem invalid for anticipation, unless the combination of parts in one device shows the elements of a basic patent. The defendants' device uses a bulb or head, with a stem or means for applying the head to the diamond-polishing tool, and a shoe with a cavity for receiving the diamond, the shoe fitting into a seat capable of being inclined to the line of support of the dop. Two converging arms or jaws are operated by a set screw through the head of the dop, and are thus capable of being brought into contact with the diamond over the cavity in the seat, thus making three points of contact as in the Loesser patent. The shoe is also capable of adjustment by a screw thread by means of which the shoe is raised or lowered to the required height under the converging claws or arms, while in the Loesser patent the shoe remains at uniform height, but the bifurcated finger or means of engaging the diamond is raised or lowered, and the diamond can be turned so as to polish the different facets or parts of the diamond, one after the other, by the simple operation of raising the finger upon relieving the pres-

sure of the set screw. It will thus be seen that if the idea of the Loesser patent is basic, and covers generally a combination of the bulb or head, the three-point contact capable of being raised or lowered, and (in claim 2) means of inclining the head or bulb to the axis of the support, then the defendants' structure would seem to infringe the complainant's patent. The defendants therefore have attacked the complainant's patent by denying invention, citing several patents of the prior art, which can be taken up at this time.

[1] The Imray patent, December 22, 1882, No. 6,117, of Great Britain, provides for holding a pearl against the edge of a disk by means of a double hook-shaped lever of which the hooks are caused to engage with the pearl and press it against the edge of the disk by means of a cam. The turning of the disk then allows a thin cutter to pass between the two hooks, and thus to cut the pearl in two. This patent shows the idea of holding an object in such a way that a cutting edge or saw may pass between two separate parts of the holder, as in the ordinary buzz-saw, but has very little connection with the idea of polishing a diamond. In fact, the similarity of a bifurcated finger to the double hook is all that would be taught by the Imray patent.

The patent of Fifield & Brainerd, March 3, 1874, No. 148,113, is an American patent for a chuck upon which to engrave metalware, such as spoons or rings. The article to be engraved is held by two jaw-heads, operated by means of a rod forcing them to approach or recede by means of the operation of a thread on the rod, thus securing contact between the two jaws and a rest, or the three points of contact exactly as shown in the defendants' structure. In fact, the defendants' dop would seem to indicate that the idea of the Fifield & Brainerd patent had been applied to the complainant's structure in exchange for the means shown by the complainant's patent. This patent will be considered again later.

The Guild patent, February 3, 1880, No. 224,086, shows a machine for the polishing of jewelry or buttons in which the article to be polished is held between jaws, preferably three in number, which clamp around the article so as to hold it while being polished. This patent uses the jaws in question exactly as a person would take an apple in the fingers, and such use of the jaws is only in combination with other devices, so that nothing is taught thereby.

The Platt patent, June 21, 1881, No. 243,303, the Koehler & Vogel patent, January 22, 1884, No. 292,437, the Souders patent, October 4, 1887, No. 371,105, and the Perry & Cornish patent, May 21, 1867, No. 64,904, are for tools embodying the ordinary proposition of applying pressure at the third point of contact from the well-known principle of a lever, and teach nothing with relation to the construction of a dop beyond the fact that stability can be acquired by three points of contact, which is hardly a patentable idea.

The Loesser patent, April 21, 1896, No. 558,734, did not much precede the patent in question, and one of the patentees seems to have been one of the patentees in the patent under discussion. That Loesser patent was for a diamond-polishing tool, and was said to

have been an improvement upon the patent of Leon Dreyfus, No. 534,821, dated February 26, 1895, which had to do with so constructing a dop as to arrange it easily and quickly at the angle at which the facets or surfaces of the diamond were to be polished. In this the diamond had to be fixed in a deep recess by some adhesive, or imbedded in soft metal, and it is only like the patent in suit in that the head holding the diamond for polishing is called a dop.

The Pimlott patent, December 4, 1866, No. 60,238, covers an improvement in a dog for lathes, by which two adjustable jaws hold the bolt or article to be worked and apply their pressure at any desired distance from the face-plate and give more or less freedom in equalizing the pressure of the jaws to suit any irregularity in the shape of the bolt or object to be turned. But this does not suggest the idea of the complainant's dop, and we come down to two patents, Hessels, November 15, 1881, No. 249,523, and Strasburger, October 13, 1896, No. 569,252, which were both for use in connection with diamonds, but of which Hessels' was for cutting and Strasburger's was for polishing. Taking Strasburger first, it would seem that he has the exact idea shown in the older Loesser patent, namely, a dop or spindle-head in which the stone is fixed with gum, but, instead of rotating the arm or spindle by means of a plate, he has an adjustable universal joint, and he adds an adjustable finger to stiffen or make more secure the stone when fastened in position. This patent certainly does not show the idea of the complainant's dop, although it was for use in polishing diamonds at an angle, and although it suggests the idea of holding the diamond immovably in the position in which it is to be polished, by means of an external finger. But the complainant's idea is radically different, in that the entire head or dop is fixed at the desired angle, and the diamond is then adjusted and mechanically held in a position to present the face which is to be polished at the required angle, instead of adhesively fastening the diamond upon the end of the spindle, and then bringing the spindle into the position required. The Hessels patent has to do with the cutting of diamonds rather than the polishing of diamonds; but, inasmuch as the operation is in connection with one of the steps in the process of preparing diamonds for the market, and as every idea of Hessels' patent would be available to a person considering how to construct a machine for polishing diamonds, but would not be patentable unless it were an invention over the Hessels' method, we must consider this patent more in detail, and it would seem that the Hessels patent is the closest of those cited in the prior art in this case. Hessels fastened the diamond to a frame or sliding-block by two converging jaws, and in one form (shown by a drawing) a retaining tongue which pressed the diamond into a recess. He desires to do away with the cementing of the diamonds to the dop, and he applies either the movable jaws or the retaining tongue to the upper portions of the diamond, thus pressing them into a recess which corresponds to the size of the diamond. He uses adjustable recesses, of various sizes, according to the need, and seems to have supplied, by his device, a mechanical method of holding the diamond rather than

the adhesive or cement method previously known. But he does not suggest, nor does the Hessels' patent teach, the simple structure of the dop patented by the complainant for polishing, and not for cutting. Hessels' much more substantial structure, with its adjustable parts, is available for cutting which requires the application of some force and a heavy machine generally while the complainant's device was an ingenious application, in one device, of somewhat similar ideas to attain similar ends with relation to polishing. The Hessels patent, therefore, would not seem to anticipate the Loesser patent in suit so as to render the Loesser patent invalid, and we therefore come back to the Fifield & Brainerd patent, in which the ordinary idea of a chuck was applied so nearly in the form in which the defendants make their device, and from which, as has been said, they seem to borrow the idea for application to the Loesser dop of the adjustable jaws and the rest for the object to be held in.

It would seem to naturally follow that, if the defendants had attempted to patent their holding device as a basic patent, it would have been anticipated by the Fifield & Brainerd patent, and would have been valid only in so far as it made use of an adjustable seat or recess in connection with the converging jaws for the holding of a diamond in a head or dop. To that extent it seems that it would have been valid, except as anticipated by the patent in suit, and we have therefore the use of this device by the defendants, in a form which they might have patented themselves, if it had not been first used and patented by the Loessers. The methods of use and of adjustment differ so between the dop for diamond polishing and the Fifield & Brainerd chuck that that chuck cannot be said to anticipate such an invention as that of the Loessers in the diamond-polishing business; and, while the use of this device is extremely narrow, nevertheless the Loesser patent would seem to be basic within that field, and they would seem to have secured the right to control the use of a single structure embodying the means for adjusting the angle at which the diamond is to be polished, the recess or adjustable cavity to hold the diamond in that position, and the bifurcated finger or three-point contact method of steadying and securing the diamond in the position in which it is placed upon the recess by an adjustable mechanical contact secured through a threaded screw in the dop itself.

Viewed from this light, the application of the Fifield & Brainerd jaws or the substitution of converging jaws would be either merely an equivalent for the bifurcated finger of the Loesser patent or at most an improvement upon that bifurcated finger, inasmuch as it allows an immediate adjustment without the double process of loosening the set screw and then raising the finger, and it must be held, therefore, that, while the defendants' device might be patented as an improvement for recognized use in connection with the invention of the Loesser patent, yet the defendants' device does infringe the ideas which are reserved to the Loessers in their patent, and that their patent is valid with respect thereto.

[2] The defendants have suggested one other defense, namely, that

some of the testimony shows that one of the Loessers said that the bifurcated finger was his father's idea. This testimony (while it may show that greater credit belonged to the father as to certain parts of the structure, or that the father might have worked out the bifurcated finger himself) does not go so far as to indicate that the patent should be held invalid because one feature of it, even though it be an important feature, was thought of by one of the two who worked out the entire invention, for otherwise it would be impossible to hold that two individuals could jointly participate in inventing a structure, as it must necessarily happen that some of the concepts representing various steps in the invention should occur to first one and then the other, and yet the invention, as a whole, be the joint product of the two.

The complainant may have a decree.