DE LASKI & THROPP CIRCULAR WOVEN TIRE CO. v. WILLIAM R. THROPP & SONS CO.

(District Court, D. New Jersey. November 2, 1914.)

1. PATENTS (§ 328*) — VALIDITY AND INFRINGEMENT — TIRE-WRAPPING MACHINE.
    The De Laski & Thropp patent, No. 1,011,450, for a machine for wrapping automobile tires, was not anticipated, discloses invention, and is valid; also held infringed.

2. PATENTS (§ 241*) — INFRINGEMENT — PART HAVING DOUBLE FUNCTION.
    The fact that an element of a machine which performs the same function as one in a machine of a prior patent also performs an additional function does not avoid infringement.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. § 380; Dec. Dig. § 241.*]

3. PATENTS (§ 92*)—VALIDITY—PATENT TO JOINT INVENTORS.

A patent to two or more persons as joint inventors is invalid, where one is the sole inventor; but such defense is regarded as technical, and not favored by the courts, and clear and convincing proof is required to sustain it.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 124; Dec. Dig. § 92.*]

4. PATENTS (§ 92*)—VALIDITY—"JOINT INVENTOR."

To constitute two persons joint inventors in case of a combination patent, it is not necessary that they should jointly conceive each part, but it is sufficient if each is the inventor of a part which contributes to the operativeness of the completed device; but if one contributes an independent element, which does not aid in rendering the device operative, or is not included in the combination claims, or is the subject of a separate claim, he is not a joint inventor.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 124; Dec. Dig. § 92.*]

5. PATENTS (§ 95*)—VALIDITY—PATENT TO ASSIGNEE OF INVENTOR.

A patent granted to the assignee of two applicants therefor as joint inventors is valid, although one was the sole inventor.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 127; Dec. Dig. § 95.*]

6. PATENTS (§ 92*)—VALIDITY—OATH TO APPLICATION.

The fact that two persons make oath to an application for a patent as joint inventors does not invalidate the patent, even though it should later develop that one was the sole inventor.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 124; Dec. Dig. § 92.*]

In Equity. Suit by the De Laski & Thropp Circular Woven Tire Company against the William R. Thropp & Sons Company. On final hearing. Decree for complainant.

Brown & Seward, of New York City (E. Clarkson Seward, of New York City, of counsel), for plaintiff.

Munn & Munn, of New York City (T. Hart Anderson, of New York City, of counsel), for defendant.

HAIGHT, District Judge. This suit is for an alleged infringement of letters patent No. 1,011,450, issued to the plaintiff, as assignee of Albert De Laski and Peter D. Thropp, December 12, 1911. The answer denies infringement, and alleges that the patent is invalid.

[1] In support of the latter defense, it is contended that, in view of the prior state of the art, the patent involved no invention, and that, if it did, it was not the joint invention of De Laski and Thropp, but the sole invention of Thropp. The subject-matter of the patent is a machine for wrapping fabric around automobile tires during the course of manufacture. Where the "open cure process" is used, it is necessary that, prior to vulcanization, the tire be tightly wrapped with muslin or other fabric. Before it is wrapped, metallic side molds or "pressure rings," which clamp the edges of the tire, the latter being then in a more or less elastic state, are placed in position and subjected to pressure, so as to form the clencher or bead portion of the tire. The whole is then wrapped and placed in the vulcanizer. After vulcaniza-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tion, the wrapper and the "pressure rings" are removed. The structure of the plaintiff's patent comprises a flat table-like support for the tires to be wrapped, in which are mounted three or more horizontally disposed rollers. These rollers are positively driven, and serve to move the tire in an annular course, through a raceway. In the latter is located a shuttle, carrying a bobbin, on which the fabric to be wrapped is wound. The shuttle, with the bobbin attached, is rotated in the raceway, and thus winds the fabric about the tire. In the table is another set of rollers, vertically disposed, which guide the tire and prevent horizontal dislodgment. Mounted on the table is a frame supporting a common head, from which arms radiate and curve downwardly towards the table. Each of these arms carries at its lower extremity a roller, located respectively above the first-mentioned rollers. These rollers are not positively driven. The alleged infringing machine is constructed in accordance with the description contained in the letters patent No. 1,031,491, granted to Joseph W. Thropp, July 2, 1912. The only substantial difference between the two machines is that in the defendant's more than one strand of fabric is applied at the same time, and the upper set of rollers are positively driven. It is to the former feature that the claims of the patent granted to Joseph W. Thropp are directed and limited. All of the claims in suit embrace a combination of elements, which, admittedly, are all present in the defendant's machine, except the upper set of rollers.

It is the defendant's contention that the upper rollers and their connecting mechanism of its machine do not perform the same function as that prescribed by the claims in question for the corresponding rollers and mechanism of the plaintiff's machine. It is upon this difference in function, and the consequent mode of operation of the respective machines, that the defendant bases its contention of noninfringement. The plaintiff contends that the upper rollers and connecting mechanism of its machine perform the double function of preventing vertical dislodgment of the tire during the winding, and, by exerting pressure on the tire and pressure rings, hold the latter in proper position, and thus prevent expansion. The defendant contends that the sole purpose and function of the corresponding rollers of its machine is to assist the lower rollers in feeding the tire. This function, it is claimed, is necessary because of the resistance of the feed, due to the double winding feature of the defendant's machine. It is further claimed that the double winding feature prevents vertical dislodgment of the tire, and consequently obviates the necessity, if there be any, of independent means for preventing vertical dislodgment. The defendant also contends that the upper rollers of the plaintiff's machine really do not perform any useful function, because the weight of the tire would, in itself, prevent vertical dislodgment, and the enormous pressure to which the tire and the containing molds have been subjected immediately prior to being inserted in the wrapping machine makes it impossible for any dislocation or expansion to take place, which these rollers could prevent. This is an important consideration, because, if defendant's contention is correct, it would tend to substantiate its claim—that the function of its upper set of rollers is not the same as that of the plaintiff's—as it would be presumed that the defendant would not annex a useless ap-

pendage to its machine and thereby incur risk of infringement, when by leaving it out infringement would be avoided.   On the other hand, if the function performed is as the plaintiff claims, the fact that defendant has incorporated a mechanism so similar in its machine would persuade one to believe that it does perform the same function, although it may perform an additional one.   The question of similarity of mode of operation depends upon the functions of the upper rollers and connecting mechanism of the respective machines.   It is important, therefore, primarily to determine the function of these rollers on the plaintiff's machine.

Some of the claims of the plaintiff's patent (2, 3, 4, and 13) state their function to be that of preventing vertical dislodgment.   The others refer to them as "pressure rollers" or "means for exerting vertical pressure" on the body during its movement.   References in the specifications speak of this mechanism as designed for exerting pressure upon the tire and the ring, to hold the parts in position during wrapping.   The evidence demonstrates that, after the tires are taken from the cold press, the pressure rings separate, to some extent, due to the expansion of the tire.   When the tire is placed in the vulcanizer, it is subjected to substantially the same pressure as when in the cold press.   The result is that the pressure rings are then forced back into practically the same position as when they first come from the cold press.   If the tires are wrapped after expansion, or while expansion is taking place, and then are contracted when placed in the vulcanizer, there will be a slack in the wrapping, which, as the evidence shows, will seriously affect the tire.   Persons who had used the plaintiff's machines were called to testify as to the utility and necessity of the upper rollers.   Several testified that the pressure feature was very essential and necessary.   Two testified that they were useless.   Each was expressing his individual judgment, based on experience.   This difference of opinion can be reconciled by considering the length of time which they, respectively, were accustomed to leave the tires in the cold press before wrapping.   Those who testified that the pressure feature was necessary left the tires in the press a much shorter time than those who claimed that the pressure feature was not essential.   This saving of time apparently is of great importance to some manufacturers, while not to others.   Likewise there may be some tires whose weight is sufficient to prevent vertical dislodgment, while there are others which require independent means.

[2] I am constrained to find, upon all the evidence, that the upper set of rollers and connecting mechanism of the plaintiff's machine perform the twofold function claimed by the plaintiff.   If the defendant's upper set of rollers perform the same function, it is clear that they perform it in substantially the same way.   The fact that they may perform the additional function of assisting the lower set of rollers in feeding the tire does not negative infringement.   Powell v. Leicester Mills Co., 108 Fed. 386, 47 C. C. A. 416 (3d Cir.).   In the specifications of the Joseph W. Thropp patent there are several references to the pressure feature.   It appears, also, that one of the claims presented by this patentee, and which was rejected, included an element of a

"superposed pressure frame." The evidence demonstrates that the actual pressure exerted on the upper set of rollers of such of the defendant's machines in actual use as were discussed in the evidence is greater than that exerted on the plaintiff's machines in actual use, and much more than necessary to insure a proper feed. From this it appears that the upper set of rollers of the defendant's machine are capable of performing the same functions as those of the plaintiff's. If the only function of the upper set of rollers of the defendant's machine is to assist in the feeding of the tire, it is difficult to see why it has been found necessary, by those actually using the machine, to employ so great a pressure. During the progress of the trial, I examined, in company with counsel of the respective parties and some of the witnesses, certain of the plaintiff's and defendant's machines which were in actual use. One of the latter was being, and had been for some time, used without the upper set of rollers being positively driven, because the mechanism for driving them had become broken. When the tire was placed in this machine for wrapping, the upper set of rollers were pressed down upon it and practically the same pressure used as on the machine with the driven rollers. The only evidence as to whether this machine worked properly is to the effect that it did.

In view of these considerations, and the fact that the upper set of rollers on the plaintiff's machine perform a necessary function, I am clearly of the opinion that the upper set of rollers and connecting mechanism of the defendant's structure perform the same functions as those of the plaintiff's, and that therefore there is an infringement.

It is urged that the patent in suit is invalid, because, in view of the prior state of the art, it did not involve invention, but mere mechanical skill. This makes necessary an examination of the prior art. The Miller patent (No. 840,642) of 1907 exhibits a tire-wrapping machine. Its construction and mode of operation, as well as the principle on which it operates, is entirely different from the plaintiff's machine. The only similarity is the bobbin feature, and the fact that it will wind a fabric about a tire. To make it correspond with plaintiff's machine, it would be necessary to completely remodel and reconstruct it, adding the table feature, the mechanism necessary to operate the lower horizontal rollers, the upper pressure rollers, the vertically disposed rollers, and practically everything, with the exception of the actual winding apparatus. Defendant also offered drawings of a tire-wrapping machine designed and constructed by one State in 1905, and used by the Goodyear Rubber Company. This machine is similar to that of the patent, except that there are no upper rollers or means for performing their function. The Dixon patent (No. 351,584) of 1886 and the Whittlesey patent (No. 801,287) of 1905 exhibit machines for wrapping coils of wire. Each of them may be said to embody all of the essential features of the claims of the patent in suit, except the upper set of rollers and connecting mechanism. These, as well as the Miller patent, were considered by the Patent Office when the application for the patent in suit was pending, and certain claims were rejected on them.

The Bean patent (No. 337,230) of 1886 and the Bagaley and Hainesworth patent (No. 379,754) of 1888 exhibit machines for rolling car wheels. The Heer patent (No. 344,273) of 1886 exhibits a machine for wrapping small curtain rings with silk, or other fibrous strands. It is very small, and designed to operate on correspondingly small articles. There is one lower roller positively driven, which moves the ring to be wrapped; above that is located another stationary roller, attached to a lever; this is held against the body to be wrapped by means of a spring; the operation of the lever raises or lowers the roller as desired. The patent is silent as to the purpose of the upper roller, but the inventor testified that it was to produce proper frictional engagement with the body to be wrapped, so as to make it revolve. In order that this machine might perform the function of the machine of the patent, it is clear that a complete reconstruction would be necessary.

This comprises the state of the prior art so far as the evidence shows. While it thus appears that the problem of winding an annulus in substantially the same way as that embodied in the plaintiff's patent was old when the latter was granted, and possibly that the method adopted in the patent of exerting pressure on an annulus was known before, it fails to show that the winding feature or element, combined with the pressure feature or element, had ever been conceived before. The result of such combination was new and beneficial. The invention is the combination of these elements producing a new and useful result as a product of the combination. National Cash Register Co. v. American Cash Register Co., 53 Fed. 371, 3 C. C. A. 559 (3d Cir.). In my opinion, it required more than mechanical skill for one having the prior art before him to have constructed a machine such as that of the plaintiff's. If I were in doubt regarding this the fact that the plaintiff's machine has gone into very general and extensive use, and has displaced other devices employed for a similar purpose, would be sufficient to turn the scale in favor of invention. Potts v. Creager, 155 U. S. 609, 15 Sup. Ct. 194, 39 L. Ed. 275.

[3] It is further urged that the patent is invalid, because it was granted for an invention purporting to be joint, which, it is claimed, was in fact the sole invention of Peter D. Thropp. It is well settled that a patent issued to two or more persons as joint inventors is invalid, where one of them is the sole inventor. This defense has, however, always been regarded as technical, and looked upon with disfavor by the courts, and clear and convincing proof has uniformly been required to sustain it. Worden v. Fisher (C. C.) 11 Fed. 505; Butler v. Bainbridge (C. C.) 29 Fed. 142; Consolidated, etc., Apparatus Co. v. Woerle (C. C.) 29 Fed. 449; Belle, etc., Co. v. Lucas (C. C.) 28 Fed. 371; Schlicht, etc., Co. v. Chicago Sewing Machine Co. (C. C.) 36 Fed. 585; Priestley v. Montague (C. C.) 47 Fed. 650; Page Woven Wire Fence Co. v. Land (C. C.) 49 Fed. 936; De Laval Separator Co. v. Vermont Farm Mach. Co., 135 Fed. 772, 68 C. C. A. 474 (2d Cir.); Quincey Mining Co. v. Krause, 151 Fed. 1012, 81 C. C. A. 290; Sieber & Trussel Mfg. Co. v. Chicago Binder & File Co. (C. C.) 177 Fed. 437. There is some confusion in the cases as to what constitutes joint invention; but,

at least as respects a combination patent in which a number of elements are present, I think these principles may be considered as settled and sound:

[4] 1. In order to constitute two persons joint inventors, it is not necessary that exactly the same idea should have occurred to each at the same time, and that they should work out together the embodiment of that idea in a perfected machine. The conception of the entire device may be due to one, but if the other makes suggestions of practical value, which assisted in working out the main idea and making it operative, or contributes an independent part of the entire invention, which is united with the parts produced by the other and creates the whole, he is a joint inventor, even though his contribution be of comparatively minor importance and merely the application of an old idea. Worden v. Fisher, supra; Consolidated, etc., Apparatus Co. v. Woerle, supra; Schlicht, etc., Co. v. Chicago Sewing Machine Co., supra; Quincey v. Krause, supra; Vrooman v. Penhollow, 179 Fed. 297, 102 C. C. A. 484 (6th Cir.); American Patent Diamond Dop Co. v. Wood (C. C.) 189 Fed. 391; Carter v. Perry, 8 O. G. 518; Chase v. Chase, 4 O. G. 4.

2. If the conception or contribution of one covers a distinct and independent part of the patented device, and is not an element which contributes to the operativeness of the completed device, or is not included in the claims covering a combination of elements, or is the subject of a separate claim in the same patent, such person is not a joint inventor. Worden v. Fisher, supra; Stewart v. Tenk (C. C.) 32 Fed. 665; Heulings v. Reid (C. C.) 58 Fed. 868; Welsbach Light Co. v. Cosmopolitan Incandescent Gaslight Co. (C. C.) 100 Fed. 648 (affirmed C. C. A., 7th Cir., 104 Fed. 83, 43 C. C. A. 418; contra, Welsbach Light Co. v. American Incandescent Lamp Co., 98 Fed. 613, 39 C. C. A. 185 [2d Cir.]); De Laval Separator Co. v. Vermont Farm Mach. Co., supra.

It appears that Mr. Peter Thropp and his brother had been engaged in the machinery business for a number of years before this invention was made. Mr. De Laski, the other joint inventor, was in their employ as a draughtsman. Mr. Thropp conceived most of the machine, and Mr. De Laski some parts, namely, the tension on the bobbin, the throwing of the shafts, which transmit the power to operate the lower set of rollers, on an angle, and the shape of the device which supports the upper set of rollers. Although Mr. Thropp, the only witness who testified on this point, in referring to De Laski's part in the making of the invention, used the word "designed," I think it clear that his meaning was "conceived." He spoke of having "designed" most of the machine himself, and Mr. De Laski having "designed some"; also, in speaking of the means for supporting the upper set of rollers, he used the expression that it "was one of Mr. De Laski's suggestions." He referred to the machine as being "all my idea, with the exception of what I told you." Considering that De Laski was only an employé of Thropp, the natural presumption would be that the latter would desire to retain for himself all of the benefits accruing from the patent, if De Laski had added nothing in the way of inventive assistance. Therefore the fact that De Laski was joined as an inventor is most cogent

evidence that De Laski did contribute ideas and assistance which were of value in producing the whole operative invention.

For all that appears, any one or all of the things which De Laski did contribute may have been the very thing or things necessary to complete the invention and make the machine operative. All of the claims sued upon have elements, in combination, embracing one or more of De Laski's contributions. The means for moving the body to be wrapped in an annular course embrace the shafts, the means for exerting pressure embrace the means for supporting the pressure rollers, and "the tension on the bobbin" is embraced within the "means for applying a wrapper to the body as it moves along in its annular course." None of these elements is the subject of an independent claim, nor are they independent or distinct from the invention as a whole. If De Laski did invent these particular devices, it follows, under the principles above stated, that he was a joint inventor. At any rate, the evidence is not sufficiently clear and convincing that he was not a joint inventor to warrant me in invalidating a patent for an otherwise meritorious invention.

[5] If this conclusion is erroneous, still I think that the patent may be sustained on another ground. The reason for the rule which invalidates a joint patent for a sole invention is that the patent is granted to at least one person who is not an inventor, or an assignee of an inventor, and who, therefore, is not, by law, entitled to receive it, as the Patent Act gives no right to a patent, except to an inventor. Barrett v. Hall, 1 Mason, 447, Fed. Cas. No. 1047 (Story, J.); Robinson on Patents, vol. 1, § 402. The patent in suit was not granted to the original applicants, but to their assignee. The law permits the granting of a patent to the assignee of "an inventor or discoverer." If one of the original applicants for the patent was the sole inventor, and joined in the assignment, the person to whom the assignment was made was an assignee of the inventor, and the mere joining of the other assignor cannot, on any principle, invalidate the assignment. The patent having been granted to the assignee, the reason for the rule does not exist, and the rule is inapplicable, because the patent has been granted to one who is, by law, entitled to receive it.

[6] Neither do I think that the fact that in the oath, required to be made by the applicants as a prerequisite to granting the patent, two persons have stated that they "verily believe" themselves to be the original and first inventors, invalidates the patent, if it later develops that they were not such, because the statute merely requires that they take oath as to their "belief." The fact that they have applied for a joint patent is at least presumptive evidence that their affidavit respecting their belief was true at the time it was made. A rule so technical and liable to lead to unjust results as that under consideration should not be extended to any greater limits than a strict construction of the statute requires.

The plaintiff is entitled to a decree, with costs.